**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-0922-17T3
A-4025-17T3

DAVID ANDERSON,

     Plaintiff-Appellant,

v.

MELISSA ANDERSON,

     Defendant-Respondent.

_____

          Argued December 9, 2019 – Decided May 28, 2020

          Before Judges Messano and Ostrer.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0959-13.

          David Anderson, appellant, argued the cause pro se.

          Marlyn E. Quinn argued the cause for respondent.

PER CURIAM

     Plaintiff David Anderson and defendant Melissa Anderson, now known as

Melissa Burton, married in 2005 and had one daughter, who was born in January

2009. Plaintiff filed for divorce in April 2013, claiming irreconcilable differences between himself and defendant. Defendant filed an answer and counterclaim, asserting among other causes of action, extreme cruelty. Plaintiff filed an answer to the counterclaim, generally denying its allegations. It suffices to say that motion practice commenced almost immediately thereafter and continued virtually unabated until trial.

During the litigation, the parties mediated an agreement regarding custody and parenting time. The consent final judgment on these issues provided that the parties would exercise "joint legal custody and shared residential custody of their daughter" and would "make all significant decisions that affect[ed their daughter] after consultation between them." The consent judgment also provided a visitation schedule for holidays, birthdays, and vacations.

Trial took place on the remaining issues on non-consecutive days from August 2016 to April 2017. The judge rendered an oral decision and filed a dual final judgment of divorce (FJOD) on July 7, 2017. We briefly summarize some relevant trial testimony to place plaintiff's appellate arguments in proper context.

Plaintiff is defendant's senior by ten years. Both are highly educated, with plaintiff having attained multiple advanced degrees, and defendant gaining

employment as a concert cellist. In 2008, they bought a home in Franklin Township, with defendant paying approximately $100,000 as a down payment from monies she inherited from her deceased father. Plaintiff initially made the mortgage payments of approximately $3000 per month. At the time, plaintiff was employed as a manager in an accounting firm and earned more than $88,000 in 2007; defendant was able to sporadically play some engagements, but her attempts to find steady employment as a musician were largely unsuccessful.

After the parties' daughter was born, defendant became her primary caretaker, and was also able to secure some freelance work as a musician and gave private music lessons. Defendant testified her annual income for 2009 was $6753.06. Plaintiff continued to work at the accounting firm, which merged with another firm in 2010. In the year immediately prior to filing for divorce, plaintiff's income was $135,191.

The mediated final consent judgment provided for the parties' mutual agreement to "endeavor to live in the same school district" where their daughter attended school. They placed their marital residence on the market after defendant paid $16,292.70 for repairs suggested by the realtor. Defendant also took over payment of most of the mortgage payments until the house eventually sold in December 2014, yielding less than $10,000 in net proceeds. Both

3

plaintiff and defendant moved into apartments in Montgomery Township, where their daughter attended school.

During the litigation, plaintiff continued to work at the accounting firm. In 2015, he earned $148,783. Defendant continued working part-time as a classical musician and gave private music lessons from her home. She obtained a teaching certificate and was able to find consistent work as a substitute teacher in the Montgomery Township school district. In 2016, her income for tax purposes was $40,198.

Plaintiff produced Dr. David Stein, a vocational rehabilitation counselor, as an expert at trial. Stein never interviewed defendant, but he conducted an evaluation of defendant's employability in two areas for which she had requisite skills, i.e., as a teacher or musician. Stein opined that defendant could earn "somewhere between [fifty] and [sixty-five thousand] dollars a year," but he acknowledged that employment within those occupations was extremely competitive, and he found no job openings near where defendant lived.

At trial, both parties described the assets they currently held in various investment accounts. Plaintiff testified his company's policy compelled his retirement at age sixty-five, which meant he would retire in August 2017. The policy applied to partners in the firm, but plaintiff was not a partner. Plaintiff

4

said he intended to continue working upon leaving the firm and was considering a teacher's position with Teach for America that would pay approximately $55,000 per year.

In an oral opinion, which we discuss as necessary below, the judge explained his factual findings and legal conclusions in support of the FJOD. In relevant part, he ordered that defendant would retain all "remaining funds from the sale of the former marital residence"; the parties would "retain any and all retirement and nonretirement accounts" in their names, as well as responsibility for all debts in their names; plaintiff would pay defendant "$800 per week in limited duration alimony" for a period of five years; plaintiff would pay defendant "$23 per week in child support" in accordance with Child Support Guidelines attached to the FJOD; plaintiff would secure health insurance for the parties' daughter, and unreimbursed medical and other expenses would be split, 54% payable by plaintiff and 46% payable by defendant; and plaintiff would pay defendant's pendente lite and trial counsel fees in the amount of $9771. The FJOD required plaintiff's alimony and child support obligations to be paid through probation "via wage garnishment." Plaintiff filed his appeal from certain provisions of the FJOD (A-0922-17).

While the appeal was pending, the probation department moved to enforce plaintiff's alimony obligations. On March 6, 2018, a different Family Part judge ordered plaintiff, under threat of possible arrest for failure to comply, to pay $10,000 by April 6, 2018, $2000 per week thereafter, and continue to submit job searches demonstrating good faith attempts to find employment (the March 2018 order).[1] Citing the FJOD, plaintiff moved for reconsideration, seeking to have the probation department adjust its account and properly reflect arrears, correct its designation of plaintiff as a "non-custodial" parent, and modify the job search obligations imposed by the March 2018 order. Defendant cross-moved seeking counsel fees.

A third Family Part judge entered an order on April 27, 2018 (the April 2018 order), accompanied by a written statement of reasons. He denied all relief requested by both parties. Plaintiff then filed a second appeal, A-4025-17, from the March 6 and April 27, 2018 orders. We have consolidated both appeals for the purpose of issuing a single opinion.

---

[1] Plaintiff's appendix only includes the order signed by the probation officer, which may have been the only order entered given the nature of the proceeding. However, we were provided with a transcript of the March 6, 2018 hearing before the judge. The body of the order reflects the judge's ruling.

I.

The trial judge found that despite plaintiff's extensive testimony regarding his employer's mandatory retirement policy, the testimony was "unpersuasive as to [p]laintiff's employability."  The judge also found plaintiff failed to establish that he had to leave his position when he turned sixty-five, and that "[e]ven if [he] did, the [p]laintiff did not demonstrate a good faith, robust job search for a position, or income of the sort that he ha[d] historically earned."  The judge imputed $149,000 income to plaintiff, approximately the amount plaintiff earned in 2014.

After imputing $40,000 in annual income to defendant, the judge analyzed the alimony claim by considering the factors listed in N.J.S.A. 2A:34-23(b).  He found that alimony was "necessary" given rental costs where the parties resided and their daughter attended school.  The judge noted "[n]either party can maintain the standard of living" they enjoyed pre-divorce, and defendant required more assistance "because of the earnings disparity." The judge limited the duration of alimony to five years, reasoning that after that time the parties' daughter would be a teenager, able to stay home alone, and defendant could then pursue additional full-time employment opportunities and career goals.

Plaintiff posits several arguments regarding the limited duration alimony award. In Points I, II, and III, plaintiff contends that the judge failed to consider N.J.S.A. 2A:34-23(j), which provides that "alimony may be modified or terminated upon the prospective or actual retirement of the obligor," and the judge's omission violated plaintiff's due process rights. In Point IV, plaintiff claims the judge erred in calculating the income he imputed to both parties, and, in Point VII, plaintiff argues the judge utilized "outdated expense data" in fashioning the alimony award. We disagree with these arguments and affirm the alimony award.

"We review the Family Part judge's findings in accordance with a deferential standard of review, recognizing the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 282–83 (2016) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "[F]indings by a 'trial court are binding on appeal when supported by adequate, substantial, credible evidence.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare, 154 N.J. at 411–12.) Deference is given to the credibility determinations made by the trial judge who "hears the case, sees and observes the witnesses, and hears them testify," thus, affording the trial judge "a better perspective than a

reviewing court in evaluating the veracity of a witness." Ibid. (quoting Cesare, 154 N.J. at 412).

"Alimony is a claim arising upon divorce, which is rooted in the prior interdependence occurring during the parties' marital relationship. '[A]limony is neither a punishment for the payor nor a reward for the payee.'" Reese v. Weis, 430 N.J. Super. 552, 569 (App. Div. 2013) (alteration in original) (quoting Mani v. Mani, 183 N.J. 70, 80 (2005)). "Alimony relates to support and standard of living; it involves the quality of economic life to which one spouse is entitled, which then becomes the obligation of the other." Gnall, 222 N.J. at 429 (citations omitted); see also Crews v. Crews, 164 N.J. 11, 16 (2000) (noting the "touchstone" for an alimony determination is the parties' standard of living during the marriage). Whenever possible, the alimony award should be set at an amount that will "enable each party to live a lifestyle 'reasonably comparable' to the marital standard of living." Id. at 26 (citing N.J.S.A. 2A:34-23(b)(4)).

Courts may award alimony "as the circumstances of the parties and the nature of the case shall render fit, reasonable and just[.]" N.J.S.A. 2A:34-23. "Whether alimony should be awarded is governed by distinct, objective standards defined by the Legislature in N.J.S.A. 2A:34-23(b)." Gnall, 222 N.J. at 429. Limited duration alimony, as awarded here, "was created as a remedy in

order to address a dependent spouse's post-divorce needs following 'shorter-term marriage where permanent or rehabilitative alimony would be inappropriate or inapplicable but where, nonetheless, economic assistance for a limited period of time would be just.'" Id. at 431 (quoting J.E.V. v. K.V., 426 N.J. Super. 475, 485–86 (App. Div. 2012)). There is no question that the trial judge considered the statutory factors, and the decision to grant defendant limited duration alimony was not a mistaken exercise of discretion under the circumstances of this case. Gonzalez-Posse v. Ricciardulli, 410 N.J. Super. 340, 354 (App. Div. 2009).

Plaintiff's reliance on N.J.S.A. 2A:34-23(j) is misplaced. Enacted as an amendment to the alimony statute in 2014, this subsection provides that "[a]limony may be modified or terminated upon the prospective or actual retirement of the obligor." Ibid. (emphasis added). Thereafter, the amendment set factors for courts to consider when modifying or terminating an existing alimony obligation. Subsection (j)(1) creates "a rebuttable presumption that alimony shall terminate upon the obligor . . . attaining full retirement age," although for good cause and upon consideration of certain factors, "[t]he rebuttable presumption may be overcome[.]" N.J.S.A. 2A:34-23(j)(1).

Subsection (2) addresses situations "[w]here the obligor seeks to retire prior to attaining full retirement age[.]" N.J.S.A. 2A:34-23(j)(2).[2]

The trial judge did not consider the statute because it did not apply. Subsection (1) applies only to modification or termination of "orders entered after the amendments' effective date." Landers v. Landers, 444 N.J. Super. 315, 323–24 (App. Div. 2016). A different standard applies to retirement modification of pre-amendment judgments, orders or agreements. Ibid. (citing N.J.S.A. 2A:34-23(j)(3)). At the time of trial, no alimony obligation existed. Therefore, neither subsection (j)(1) nor (j)(3) applied. Plaintiff's arguments to the contrary do not warrant discussion in a written opinion, because they are contrary to our precedent and the clear language of the statute. DiProspero v. Penn, 183 N.J. 477, 492 (2005).

Plaintiff also contends that in violation of his due process rights, the judge never advised him that subsection (j) did not apply. We know of no authority

---

[2] "Full retirement age" is defined as "the age at which a person is eligible to receive full retirement benefits under section 216 of the federal Social Security Act, 42 U.S.C. § 416." N.J.S.A. 2A:34-23.

that compels the court to provide its view of controlling legal principles in advance. The argument warrants no further discussion. R. 2:11-3(e)(1)(E).[3]

We also reject plaintiff's other challenges to the alimony award. Plaintiff never testified that he was retiring from the work force, but, rather, only that he intended to seek employment in a position that paid significantly less than he had historically earned. Under the circumstances, the judge's decision to impute income to plaintiff regardless of his company's retirement policy was not a mistaken exercise of discretion. See Elrom v. Elrom, 439 N.J. Super. 424, 434 (App. Div. 2015) ("Imputation of income is a discretionary matter not capable of precise or exact determination[,] but rather requir[es] a trial judge to realistically appraise capacity to earn and job availability.") (alterations in original) (quoting Gnall v. Gnall, 432 N.J. Super. 129, 158 (App. Div. 2013)).

In setting the amount of imputed income for both parties, the judge carefully considered the trial testimony. He rejected plaintiff's expert's testimony regarding defendant's earning ability not only because, as plaintiff claims, Stein failed to interview defendant, but also because the employment

---

[3] Plaintiff also contends his due process rights were violated by the trial judge's delay in issuing the JOD and accompanying decision. The decision was issued less than three months after the trial ended; and plaintiff did not suffer any prejudice as a result.

A-0922-17T3

positions Stein identified were essentially inaccessible to defendant. The judge determined Stein's conclusions "were unsupported by the facts of this case." For reasons already explained, the judge's imputation of annual income to plaintiff was based on credible evidence in the record.

Finally, in Point VII, plaintiff argues that the court erred in its alimony calculation because it used "outdated expense data." Plaintiff points to pendente lite decisions made by another judge, which presumably showed actual lifestyle expenses for both parties after the marital home was sold.

However, Rule 5:5-2(c) provides:

> Parties are under a continuing duty in all cases to inform the court of any material changes in the information supplied on the case information statement. All amendments to the statement shall be filed with the court no later than [twenty] days before the final hearing. The court may prohibit a party from introducing into evidence any information not disclosed or it may enter such other order as it deems appropriate.
>
> [(Emphasis added).]

The only expense data that plaintiff entered into evidence at trial was a CIS from 2013, and that was introduced during cross-examination, when defense counsel attempted to rebut plaintiff's claim that pendente lite support should be reduced. As the trial judge noted in his decision, "Plaintiff did not testify in any level of

detail to his expenses, other than from a historic perspective, to address his . . . claim [for a reduction in support]."

We affirm the award of limited duration alimony.[4]

II.

In Point VI, plaintiff contends the judge failed to account for the equally shared parenting schedule in this case when he awarded child support to defendant. Plaintiff argues the judge was required to apply the analytic formula adopted by the trial court in Wunsch-Deffler v. Deffler, 406 N.J. Super. 505, 509 (Ch. Div. 2009). We disagree.

Our rules require that the court apply the Child Support Guidelines when considering child support; however, the court may modify or disregard the guidelines where good cause is shown. R. 5:6A. Here, the court applied the Guidelines with precision, using the shared parenting worksheet, found at Appendix IX-D, and the schedule of child support awards, found at Appendix IX-F, and calculated that plaintiff owed defendant $23 per week in child support. The judge specifically rejected application of the Wunsch-Deffler formula,

_____

[4] In Point VII, plaintiff also extends his argument about stale financial data to the judge's imputation of income for purposes of determining child support. We need not address the argument separately. The judge did not mistakenly exercise his broad discretion in determining the amount of income to impute to the parties.

A-0922-17T3

noting that it would result in plaintiff paying no child support, which would be "inequitable under the circumstances."

The decision in Wunsch-Deffler was not binding on another trial court. Given the wide income disparity between the parties, ordering plaintiff to pay such a modest amount of child support was not unjust. We refuse to reverse the FJOD in this regard.

III.

In Point VIII, plaintiff contends the judge failed to consider prior pendente lite orders requiring defendant to pay her pro rata share of income taxes for 2012, 2013, and 2014, and give plaintiff a credit because he overpaid his share of taxes due to defendant's failure to cooperate. In Point IX, plaintiff challenges the judge's determinations regarding equitable distribution. He contends the judge's fact-finding misstated "established facts and . . . disregard[ed] other pertinent established facts." In Point X, plaintiff challenges the counsel fee award, arguing the judge failed to adjudicate the pendente lite tax liability issue and erred in his finding regarding the parties' respective abilities to pay. We are unpersuaded by all these arguments and affirm.

Pendente lite support orders are subject to modification at the time final judgment is entered. Mallamo v. Mallamo, 280 N.J. Super. 8, 12 (App. Div.

15

1995).  Any changes in the initial orders rest with the trial judge's discretion.

Jacobitti v. Jacobitti, 263 N.J. Super. 608, 617 (App. Div. 1993).  That is because

> [i]n many instances the motion judge is presented reams of conflicting and, at time, incomplete information concerning the income, assets and lifestyles of the litigants.  The orders are entered largely based upon a review of the submitted papers supplemented by oral argument.  Absent agreement between the parties, however, a judge will not receive a reasonably complete picture of the financial status of the parties until a full trial is conducted.  Only then can the judge evaluate the evidence, oral and documentary, and weigh the credibility of the parties.  Only then can the judge determine whether the supporting spouse has the economic means represented by the other spouse or in the case of declining income has suffered legitimate economic reversal or has been afflicted with a temporary case of diminished resources occasioned by a divorce.
>
> [Mallamo, 280 N.J. Super. at 16.]

Here, the trial judge concluded there was no tax liability for 2012, noting the complaint for divorce was filed after the tax filing deadline and after taxes were paid in 2013.  A previous judge had entered the June 2014 order, requiring defendant to pay taxes for 2013 "at the parties' overall tax rate, on her individually earned share of their overall gross income."  However, in January 2016, a different judge, not the trial judge, denied plaintiff's pendente lite motion to compel defendant to pay $823.39, which plaintiff claimed was his increased

16

tax liability for 2013 because defendant failed to cooperate and file a joint return. That judge found the earlier order "unclear," and noted plaintiff had failed to provide "the basis for his claim."

Plaintiff makes no specific claim about the 2014 taxes. The trial judge noted that plaintiff had obtained the benefit of claiming his daughter as a deduction and the carrying costs associated with the marital home, even though defendant had actually made the payments. To the extent we have not otherwise specifically addressed plaintiff's arguments, they lack sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

Equally without merit is plaintiff's argument about the judge's fact-finding regarding equitable distribution. We note plaintiff was not ordered to reimburse defendant for monies the judge found she spent on repairs to the marital home and mortgage payments she made until it was sold. Contrary to plaintiff's argument, the pertinent question in determining equitable distribution is not "which of the parties is in worse financial condition relative to the other[,]" but, rather, whether the judge considered the factors listed in N.J.S.A. 2A:34-23.1 in making the award. Here, the judge considered those factors, and thus, his decision was not an abuse of discretion. See M.G. v. S.M., 457 N.J. Super. 286, 294 (App. Div. 2018) ("A Family Part judge has broad discretion . . . in

17

allocating assets subject to equitable distribution." (quoting Clark v. Clark, 429 N.J. Super. 61, 71 (App. Div. 2012))).

Lastly, the award of counsel fees is left to the broad discretion of the Family Part judge. Slutsky v. Slutsky, 451 N.J. Super. 332, 365 (App. Div. 2017). Therefore, "[w]e will disturb a trial court's determination on counsel fees only on the 'rarest occasion,' and then only because of clear abuse of discretion." Ibid. (quoting Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008)).

Here, the judge found prior pendente lite fee awards to defendant were justified and reasonable, and defendant incurred legal expenses, still awarded and unpaid, as a result of unnecessary enforcement actions occasioned by plaintiff's failures to abide by court orders. The judge also evaluated the factors listed in Rule 5:3-5(c), including defendant having prevailed on key issues at trial, and awarded defendant one-half of the amount she sought for fees incurred, in addition to the pendente lite fee awards.

There is no basis to reverse the counsel fees awarded to defendant in the FJOD.

## IV.

"Extreme cruelty . . . is defined as including any physical or mental cruelty which endangers the safety or health of the plaintiff or makes it improper or

unreasonable to expect the plaintiff to continue to cohabit with the defendant[.]" N.J.S.A. 2A:34-2(c).[5] In Point V, plaintiff argues it was error to grant defendant a divorce on this ground. Plaintiff cites the judge's failure to make any factual findings on the issue; and also claims the trial evidence failed to support the cause of action.

At the very beginning of his oral opinion, the judge found that plaintiff proved "a cause of action for divorce based upon irreconcilable differences, . . . based on . . . [d]efendant's testimony, she . . . has met and proven a cause of action for extreme cruelty under her counterclaim for divorce." There was no further mention of the issue in the more than one hundred succeeding pages of transcript.

The Supreme Court has explained that the statutory definition of extreme cruelty

> constitutes an effort to modernize the concept of cruelty in a moderate fashion. It is broad enough to cover serious martial misconduct which endangers health or safety, or makes it improper or unreasonable to expect continues cohabitation. The terms are flexible but do not include trivial misconduct or ordinary contretemps. Minor frictions or frustrations, such as nagging or bullying, would not suffice unless in the aggregate when combined with other misconduct the cumulative

---

[5] Since the claim was asserted in defendant's counterclaim, when considering our references to the statute and relevant case law, she is "plaintiff."

effect endangers health or makes the relationship so intolerable that further cohabitation cannot reasonably be expected.

An attempt is made to focus upon the effect of extreme cruelty upon the plaintiff, rather than upon the defendant's mens rea or intent to inflict pain. The result, insofar as the plaintiff is concerned, is the same whether the "cruelty" is calculated and designed or a by-product of the defendant's self-centeredness. Moreover[,] the result to the marriage relationship may be the same regardless of the defendant's motives. The focus should be upon what the misconduct has done to the marriage, not on punishing the defendant.

[Kinsella v. Kinsella, 150 N.J. 276, 310 (1997) (quoting Final Report of the N.J. Divorce Law Study Comm'n 6 (1970)).]

"[T]he subjective experience of the plaintiff, rather than the objective quality of the acts complained of, [i]s determinative." Id. at 311 (citing Devito v. Devito, 136 N.J. Super. 580, 583 (Ch. Div. 1975)).

At trial, defendant testified at length about plaintiff's insistence that she use her inheritance for the down payment on the house and certain medical treatments prior to the birth of the parties' daughter; his refusal to reimburse her for family necessities; his lack of empathy for other medical conditions that required treatment; the time he spent away from home; and his general refusal to consider her financial and career needs when making family decisions. However, as noted, the judge never made specific findings as to this testimony

in relation to the cause of action and failed to provide any reasoning for his conclusion that defendant met her burden of proof.

"Trial judges are under a duty to make findings of fact and to state reasons in support of their conclusions." Giarusso v. Giarusso, 455 N.J. Super. 42, 53 (App. Div. 2018) (quoting Heinl v. Heinl, 287 N.J. Super. 337, 347 (App. Div. 1996)). "Naked conclusions do not satisfy the purpose of [Rule] 1:7-4." Ibid. (alteration in original) (quoting Curtis v. Finneran, 83 N.J. 563, 570 (1980)). The judge failed to do so in this case.

However, the FJOD simply provides that "[t]he parties are . . . divorced and the marriage is dissolved pursuant to N.J.S.A. 2A:34[,]" without reference to the statutory grounds for divorce. Our review is limited to "the judgment entered by the trial court, not the reasoning underlying the court's decision." Bandler v. Melillo, 443 N.J. Super. 203, 210 (App. Div. 2015) (citing Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001)). We are convinced that the evidence adduced by both parties supported the court's dual judgment for divorce under N.J.S.A. 2A:34-2(i), irreconcilable differences, and affirm.

In sum, in A-0922-17, we affirm in all respects.

In his oral decision supporting the FJOD, the trial judge cited the January 2016 pendente lite order we referenced above and expressly denied plaintiff's request to revisit the then-current arrears of $17,658.70, finding plaintiff provided "no reason" to do so. The FJOD did not specifically address the issue of pendente lite arrears, however, the Uniform Summary Support Order (USSO) signed by the trial judge included the weekly alimony and child support amounts in the FJOD but had zero as the amount for a weekly arrears payment.

We gather an arrest warrant was subsequently issued for plaintiff's failure to comply, and plaintiff moved pursuant to an order to show cause to vacate the warrant. In December 2017, another judge vacated the arrest warrant and ordered plaintiff to continue his job search efforts; she scheduled a hearing in March 2018 for an update on plaintiff's efforts. Nothing in the order to show cause indicates plaintiff contested the amount of arrears.

At the March 6, 2018 hearing, probation reported defendant's arrearages exceeded $36,000. The transcript from the hearing reveals plaintiff claimed the amount was "wrong," and probation "made a clerical error in transcribing" the FJOD. Plaintiff acknowledged that probation would not modify the amount of his monthly payments unless he filed a motion, which he admittedly had failed

to do. Instead, plaintiff spent the balance of the hearing attempting to relitigate the trial and the alimony awarded in the FJOD. The judge entered the March 2018 order, requiring plaintiff to pay a lump sum of $10,000 within one month, and $2000 per week towards arrears thereafter.

Plaintiff's motion for reconsideration was heard on the papers and subsequently denied by another judge. In his written statement of reasons, the judge rejected plaintiff's claim that the arrears amount was a clerical error. The judge carefully reviewed the trial judge's oral decision and concluded that he never vacated the arrears then due from plaintiff. Citing a letter from the vicinage ombudsman in response to plaintiff's complaint, the judge noted that the USSO was prepared by Family Division staff and reflected the probation department's admitted failure to "sync up" the existing pendente lite arrears with plaintiff's obligations going forward.

The judge also denied plaintiff's request to reconsider the March 2018 order. The judge cited the pending appeal, findings made by the trial judge in his oral decision, and plaintiff's failure to seek a stay of his support obligations pending appeal. Lastly, the judge denied plaintiff's request to change his designation as "non-custodial" parent in probation department records, noting the ombudsman's response that the designation was purely a term applied to all

obligors by probation's record system. The April 2018 order denied plaintiff's requests to have probation "adjust its records of support arrearage . . . modify the requirements for the job search . . . [and] correct the designation of plaintiff in probation records from non-custodial to custodial[.]"

Before us, plaintiff contends it was error to carry over any pendente lite arrears in addition to the amounts awarded defendant in the FJOD. He points to the USSO as evidence that the trial judge never ordered those arrears be carried forward. He also argues that in entering the March 2018 order, the judge failed to consider his ability to pay, and therefore we must void that portion of her order that contemplated potential incarceration if plaintiff failed to comply with his obligations. Lastly, plaintiff contends that because he shares custody of his daughter with defendant, probation's records should be amended to reflect he is a custodial, and not a non-custodial, parent.

In partial response, defendant argues we should dismiss the appeal entirely, because "[p]laintiff [has] failed to provide the motion pleadings and orders necessary for the appellate court to review the trial court's decision . . . ." Indeed, appellants are required to provide all "parts of the record . . . as are essential to the proper consideration of the issues." R. 2:6-1(a)(1)(I). This includes, for example, all motion papers filed on a motion for reconsideration.

Newman v. Isuzu Motors Am., Inc., 367 N.J. Super. 141, 145 (App. Div. 2004). "Without the necessary documents," our appellate review is thwarted, sometimes leaving us with "no alternative but to affirm." Soc'y Hill Condo. Ass'n v. Soc'y Hill Assocs., 347 N.J. Super. 163, 177–78 (App. Div. 2002); see also Cipala v. Lincoln Tech. Inst., 179 N.J. 45, 54–55 (2004) (affirming the appellate court's refusal to address an argument raised by appellant, where appellant failed to include an order or transcript relating to the argument).

Here, plaintiff failed to include in his appendix any of the underlying motion pleadings. We therefore have the discretion to dismiss plaintiff's appeal based on these procedural deficiencies. Nevertheless, to bring this protracted litigation to some semblance of closure, we address the issues.

As to the incorporation of arrears from pendente lite orders, "[i]t is well-established . . . that 'on an application to determine the amount of arrearages and to compel their payment, the court has discretion to determine whether the prior support order or judgment should be enforced and whether and to what extent a spouse should be forced to pay[.]'" Weitzman v. Weitzman, 228 N.J. Super. 346, 358 (App. Div. 1988) (quoting Mastropole v. Mastropole, 181 N.J. Super. 130, 141 (App. Div. 1981)).

Moreover, resolution of a motion for reconsideration is addressed to the sound discretion of the trial court. Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010).

> It is not appropriate merely because a litigant is dissatisfied with a decision of the court or wishes to reargue a motion, but
>
> > should be utilized only for those cases which fall into that narrow corridor in which either 1) the Court has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the Court either did not consider, or failed to appreciate the significance of probative, competent evidence.
>
> [Ibid. (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990).]

Here, plaintiff has not provided us with any supporting documents he supplied to the judge in urging reconsideration. Nevertheless, we conclude that the judge did not abuse his discretion in denying the motion. He relied on the trial judge's oral opinion and concluded that the judge did not vacate the pendente lite support arrearages when filing the FJOD. Although the FJOD lacked an express provision regarding arrearages, the trial judge's oral opinion controls any implicit conflict. Taylor v. Int'l Maytex Tank Term. Corp., 355 N.J. Super. 482, 496 (App. Div. 2002). Moreover, plaintiff's reliance on the

26

contemporaneous USSO is misplaced, not only because, as the judge explained, probation failed to accurately prepare the order, but also because the USSO specifically states, "except as provided herein, all prior orders of the court remain in full force and effect."

We need not consider plaintiff's argument that the judge erred in concluding reconsideration of the arrears was preserved for presentation in the already-filed appeal from the FJOD. Plaintiff's over-reads the judge's written statement of reasons, and, as already noted, we review only the order entered, not the judge's reasoning. <u>Bandler</u>, 443 N.J. Super. at 210.

Defendant asserts, among other things, that plaintiff's request that we void that portion of the March 2018 order that provided for the issuance of an arrest warrant if plaintiff remained delinquent in his obligations is moot. Although he did not supply any of the underlying filings, plaintiff acknowledges in his brief that he was arrested in May, subsequent to entry of the April 2018 order. We are advised by defendant that plaintiff was released after an agreement to pay $2500. Unfortunately, neither party supplied us with a copy of that a subsequent order.

In any event, contrary to plaintiff's terse statement in rejoinder to defendant's claim, the issue is moot. <u>See</u> <u>Betancourt v. Trinitas Hosp.</u>, 415 N.J.

Super. 301, 311 (2010) ("[A]n issue is 'moot' when the decision sought in a matter, when rendered, can have no practical effect on the existing controversy." (quoting Greenfield v. N.J. Dep't of Corr., 382 N.J. Super. 254, 257–58 (App. Div. 2006))). Here, the Family Part already effectuated the provision in the March 2018 order that enforced payment of plaintiff's obligation on threat of arrest.

Lastly, neither the March 2018 order nor the April 2018 order denotes that plaintiff is a "non-custodial parent." Nor is there any document in the record that uses that designation. Based on the ombudsman's response to plaintiff's letter of complaint, we have no doubt plaintiff was referred to by the probation department in some undisclosed manner or document as a non-custodial parent. Also, based on the ombudsman's response, we assume that this vicinage's probation department was not alone in having to deal with a record-keeping apparatus that lacked precision. However, given the state of the appellate record, and our inability to assess statewide ramifications and practical concerns that might be occasioned by our intervention, we refuse to consider plaintiff's argument.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

28

A-0922-17T3