982 A.2d 42 (2009)
410 N.J. Super. 340
Celina GONZALEZ-POSSE, Plaintiff-Respondent/Cross-Appellant,
v.
Jose RICCIARDULLI, Defendant-Appellant/Cross-Respondent.
DOCKET NO. A-5501-06T2.
Superior Court of New Jersey, Appellate Division.
Submitted October 6, 2009.
Decided November 9, 2009.
*44 Michael J. Muller, Hackensack, for appellant/cross-respondent.
*45 Brad M. Micklin, Nutley, for respondent/cross-appellant.
Before Judges CARCHMAN, PARRILLO and ASHRAFI.
The opinion of the court was delivered by
PARRILLO, J.A.D.
In this post-divorce action, defendant Jose Ricciardulli moved for a decrease in his child support obligation, termination of alimony, and counsel fees. Plaintiff Celina Gonzalez-Posse opposed the application on grounds that defendant's claimed change in circumstances was completely voluntary and sought other relief including counsel fees, sole ownership of their apartment in Argentina, and a freeze on defendant's pension accounts. Following a thirteen-day hearing, the trial judge reduced defendant's child support obligation from $446 to $144 weekly, modified spousal support from $500 weekly for five years to $100 weekly for seventeen years, denied counsel fees to both parties as well as plaintiff's remaining requests for relief, save to compel defendant to reimburse plaintiff certain expenses related to their children. Defendant appeals from those portions of the order of June 29, 2007, denying his requests to terminate alimony and for counsel fees and directing reimbursement to plaintiff for certain expenses. Plaintiff cross-appeals from those portions of the order reducing defendant's child support obligation, modifying spousal support, and denying her other claims for relief. For the following reasons, we affirm in part, reverse in part and remand for further proceedings.
By way of background, the parties are Argentinean citizens who married in 1995 in Argentina and had three children, all born in Argentina. About a year after the birth of their youngest child, in August 1998, the parties moved to the United States and settled in New Jersey, upon defendant obtaining an H-1B visa.[1] Defendant, a lawyer who earned his law degree in Argentina and an L.L.M. at New York University Law School, worked as an associate at the New York law firm Dewey Ballantine, LLP, following which, in 2002, he began working for Hewlett-Packard Financial Services, and then in 2004 for DirecTV Latin America (DirecTV).
In February 2005, the parties separated and in April, plaintiff filed for divorce. On January 23, 2006, the parties executed a Property Settlement Agreement (PSA), wherein defendant agreed to, among other things, pay limited duration alimony for five years after entry of divorce, specifically $500 per week for the first three years and $442.30 per week for the final two years. Defendant also agreed to pay child support of $446 per week, in addition to health insurance premiums for the three children, and 26% of certain of their living, medical and extracurricular expenses. The alimony and child support amounts were determined on the basis of defendant's 2005 salary of $150,000 and plaintiff's 2005 salary of $21,000. The PSA was *46 incorporated into the final judgment of divorce (FJD) of January 25, 2006.
At around this same time, defendant was entering the seventh year of his H-1B visa, having qualified for an extension on January 31, 2005 when DirecTV filed a Labor Certification on his behalf. Unfortunately, however, on January 13, 2006, defendant received a lay-off notice from DirecTV, advising him of his termination effective January 27, 2006. Consequently, DirecTV withdrew its petition for a Labor Certification, resulting in the immediate invalidation of defendant's seventh year as an H-1B resident. Because defendant had exhausted the six-year limitation on extensions as of right in the H-1B program, he was disqualified from obtaining sponsorship from another company. By law, he was required to leave the United States either voluntarily or subject himself to deportation.[2]
Defendant returned to Argentina around March 15, 2006, after obtaining a temporary tourist visa in order to wind up his affairs.[3] In accordance with the PSA, defendant prepaid plaintiff $22,000 in alimony and child support obligations prior to leaving. Upon his return to Argentina, defendant obtained part-time employment as in-house counsel in various Argentinean companies, as well as from private clients, resulting in income for the year 2006, calculated on an exchange rate of 3.11, of US$9,378 gross (US$8,628 net). Thereafter, on December 13, 2006, defendant obtained full-time employment at an Argentinean law firm, Estudio O'Farrell, and his compensation increased to roughly US$26,000 per year, or 7,000 Argentinean pesos per month.[4]
On October 18, 2006, defendant moved in the Family Part to terminate alimony and reduce his child support obligation based on his forced departure from the United States and his decreased income and earning capacity in Argentina. Plaintiff opposed the motion, alleging defendant orchestrated his return to his homeland to avoid his support obligations, and cross-moved for, among other things, reimbursement of certain of their children's expenses. The court ordered a plenary hearing to determine both the reason for defendant's decreased income and his actual earning capacity.
The ensuing hearing endured for thirteen days. At the close of evidence, the Family Part judge found that "there was no evidence to support [plaintiff's] contention that [d]efendant's termination from DirecTV was voluntary, or that he had deliberately orchestrated his return to Argentina in order to evade his financial responsibilities as set forth in the parties' Property Settlement Agreement." The judge also determined that defendant's income was 7,000 Argentinean pesos per month, which, calculated at the exchange rate of 3.05 at the time of the plenary hearing, equaled approximately US$2,295 per month, or $534 per week.
Accordingly, having found an involuntary and substantial change in circumstances, and based on the Child Support Guidelines using defendant's income of 7,000 pesos per month and plaintiff's claimed weekly income of $530, the judge reduced defendant's child support obligation *47 to $144 per week (from $446). While he rejected defendant's further request to terminate alimony, and left the balance of the original PSA aggregate amount of $88,615 intact, the judge reduced weekly alimony to $100 per week, or $5,200 annually, effectively extending a limited, five year spousal support obligation to seventeen years. In modifying the length of the alimony term, the court found "unusual circumstances," N.J.S.A. 2A:34-23, due to defendant's "departure from the United States immediately following the parties' Divorce and due to Defendant's difficulty in obtaining proper immigration status to be able to return to the United States." The court also expressly allowed future application by plaintiff for upward modification in the weekly alimony amount should defendant either return to the United States, or remain in Argentina, and obtain employment at substantially higher income than his current earnings.
In its June 29, 2007 order, the court also directed defendant to (1) report his income to plaintiff annually, or within 30 days of gaining employment in the United States; (2) pay his support arrears within 60 days of judgment; (3) provide health insurance for the parties' three children; and (4) pay 26 percent of the children's living, medical and extracurricular expenses that are not included, pursuant to the PSA, in basic child support.[5] The judge denied both parties' requests for attorneys' fees, and denied plaintiff's requests to freeze defendant's pension and to award her sole title to the parties' apartment in Argentina. This appeal and cross-appeal follow.
Following our review of the record and arguments of counsel, we conclude that defendant's challenges to those portions of the court's June 29, 2007 order denying him counsel fees and directing reimbursement to plaintiff for certain of the children's expenses to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(A) and (E). Equally without merit and undeserving of further comment are plaintiff's challenges to those portions of the order denying her counsel fees, full title to the Argentina property, and a freeze of defendant's pension accounts. Ibid. We, therefore, affirm those applicable portions of the June 29, 2007 order, substantially for the reasons stated by the Family Part judge in his oral opinion of June 27, 2007, and supplemental written opinion, Rule 2:5-1(b), of August 29, 2007.
The gravamen of defendant's challenge on appeal concerns the court's failure to terminate alimony and its effective conversion of his limited spousal support obligation into a permanent one. Plaintiff, on the other hand, challenges the reduction in both defendant's child and spousal support obligations, claiming that the court erred in finding defendant's change in circumstances involuntary. As to the latter, the trial judge, after a thirteen-day plenary hearing, expressly found "no evidence" that defendant's termination from DirecTV, departure from the United States and so-called "underemployment" in Argentina, were voluntary, deliberate actions under his control. We, of course, "accord deference to family court fact-finding" if those findings are supported by substantial credible evidence in the record. Cesare v. Cesare, 154 N.J. 394, 413, 713 A.2d 390 (1998). Here, substantial, if not undisputed, evidence demonstrates that defendant was terminated from his job as in-house counsel to DirecTV and therefore was unable to remain in the United States due to the expiration of his H-1B *48 visa. As such, he had no choice but to resettle in his native Argentina where his drastically reduced earnings as an attorney appear to be commensurate with that country's economic circumstances and the prevailing exchange rate. Plaintiff has offered no evidence to the contrary. Thus, there is ample support for the judge's determination of an involuntary and substantial change of circumstances. Having so concluded, we next address whether the resultant modifications in defendant's support obligations are equally supported in the record.

I
Child support orders "may be revised and altered by the court from time to time as circumstances may require." N.J.S.A. 2A:34-23. However, a prima facie showing of changed circumstances is first required. Lepis v. Lepis, 83 N.J. 139, 157, 416 A.2d 45 (1980); Isaacson v. Isaacson, 348 N.J.Super. 560, 579, 792 A.2d 525 (App.Div.), certif. denied, 174 N.J. 364, 807 A.2d 195 (2002). Once a prima facie showing of changed circumstances has been made, the standard that governs the setting of a new child support order is the same standard that applies at the time of the original judgment of divorce. See N.J.S.A. 2A:34-23(a). Of course, the underpinning for a support award is the obligor's ability to pay, Dorfman v. Dorfman, 315 N.J.Super. 511, 516, 719 A.2d 178 (App.Div.1998), although not the sole consideration. Obviously, the needs and best interests of the child are equally controlling. See N.J.S.A. 2A:34-23; Lepis, supra, 83 N.J. at 157, 416 A.2d 45.
As noted, the court properly found a substantial change in circumstances and then based on defendant's reduced income, decreased his child support obligation to $144 per week for 50 weeks out of the year, and in alternate years, for 49 weeks out of the year.[6] This amount, calculated in accordance with the Child Support Guidelines, is reasonably based in the evidence and should not be disturbed.
In this regard, the court heard "voluminous testimony" concerning defendant's earning capacity as an attorney in Argentina. In addition to defendant, various witnesses testified that defendant's earning capacity was about 7000 Argentinean pesos per month, which, at the exchange rate at the time of the plenary hearing of approximately 3.05 Argentinean pesos to the dollar, was approximately US$2,295 per month. The documentary proof of defendant's actual income in Argentina supported these assertions. Defendant provided numerous pay stubs and invoices from his part-time employment for the months of July, August and September, 2006, as well as a certification from the law firm of Estudio O'Farrell that defendant began work in Buenos Aires on December 13, 2006 and that his compensation was 7,000 Argentinean pesos per month.
Defendant also provided an amended Case Information Statement (CIS) reflecting his diminished earning capacity and also testified as to his new standard of living in Argentina. There was neither proof of concealment, as plaintiff contends, nor proof that defendant's lifestyle was so disparate compared to his reported income to necessitate further inquiry. Rather, plaintiff simply claimed that she did not trust defendant, and that, as a lawyer of his distinction, he "must" have been receiving more income. That bare allegation, however, provides no basis to question defendant's *49 otherwise undisputed proofs or the court's fact-finding based thereon. Consequently, sufficient credible evidence supports the judge's informed determination as to "what, in light of all the [circumstances] is equitable and fair." Lepis, supra, 83 N.J. at 158, 416 A.2d 45 (internal citations omitted).

II
The same changed circumstances warranting reduced child support caused the judge to modify the alimony award set in the PSA.[7] Defendant now argues the evidence compelled termination of spousal support altogether, while plaintiff contends the court-ordered reduction was unwarranted. In our view, the court's extension of the alimony term was based on misapplication of the law and mistaken facts.
Once changed circumstances have been established, as here, Lepis, supra, 83 N.J. at 151, 416 A.2d 45; Martindell v. Martindell, 21 N.J. 341, 353, 122 A.2d 352 (1956), the standard that governs an application for modification of spousal support set in a PSA is the same that applies at the time of the original judgment of divorce: "the dependent spouse's needs, that spouse's ability to contribute to the fulfillment of those needs, and the supporting spouse's ability to maintain the dependent spouse at the former standard." Lepis, supra, 83 N.J. at 152, 416 A.2d 45. The extent of actual economic dependency determines the duration of support as well as its amount. Gayet v. Gayet, 92 N.J. 149, 154, 456 A.2d 102 (1983). Moreover, a trial court is only obligated to follow a settlement agreement to the extent it is equitable and just. Innes v. Innes, 117 N.J. 496, 518, 569 A.2d 770 (1990) (internal citations omitted).
In an application brought by a supporting spouse for a downward modification in alimony, such as the present case, a focal issue is the supporting spouse's ability to pay. Miller v. Miller, 160 N.J. 408, 420, 734 A.2d 752 (1999). Ability to generate income is not the only measure, however, and the inquiry may also include the dependent's earning capacity and actual income, including any increase therein. Ibid.; N.J.S.A. 2A:34-23(b)(1); (5); (10) and (11). In the end, "[e]ach and every motion to modify an alimony obligation `rests upon its own particular footing and the appellate court must give due recognition to the wide discretion which our law rightly affords to the trial judges who deal with these matters.'" Donnelly v. Donnelly, 405 N.J.Super. 117, 127, 963 A.2d 855 (2009) (quoting Larbig v. Larbig, 384 N.J.Super. 17, 21, 894 A.2d 1 (2006) (internal citations omitted)).
Courts may now award one or more of the following types of alimony: permanent, rehabilitative, reimbursement, or limited duration. N.J.S.A. 2A:34-23(b). See Cox v. Cox, 335 N.J.Super. 465, 474, 762 A.2d 1040 (App.Div.2000). Only permanent alimony was recognized by statute prior to 1988, when the Legislature codified the concept of rehabilitative alimony, L. 1988, c. 153, § 3, as previously explored by the Supreme Court in Lepis, supra, 83 N.J. at 155-56, 416 A.2d 45, and Hill v. Hill, 91 N.J. 506, 509-10, 453 A.2d 537 (1982). See Heinl v. Heinl, 287 N.J.Super. 337, 348, 671 A.2d 147 (App.Div.1996). In contrast to rehabilitative alimony, permanent alimony is generally awarded in a marriage of long duration when there is *50 economic need, in recognition of the increased earning capacity of the supporting spouse at the cost of the supported spouse's lost economic opportunities. Cox, supra, 335 N.J.Super. at 476, 482-83, 762 A.2d 1040.
By further amendment to N.J.S.A. 2A:34-23(b), effective September 13, 1999, the Legislature recognized two additional forms of alimony  reimbursement alimony and limited duration alimony. L. 1999, c. 199, § 1. The former, although not relevant here, is intended to compensate a spouse who has made financial sacrifices resulting in a reduced standard of living by enabling the other spouse to forego gainful employment while securing an advanced degree or professional license to enhance the parties' future standard of living. Mahoney v. Mahoney, 91 N.J. 488, 500-01, 453 A.2d 527 (1982). On the other hand, limited duration alimony, which is applicable here, "is not intended to facilitate the earning capacity of a dependent spouse or to make a sacrificing spouse whole, but rather to address those circumstances where an economic need for alimony is established, but the marriage was of short-term duration such that permanent alimony is not appropriate." Cox, supra, 335 N.J.Super. at 476, 762 A.2d 1040. "All other statutory factors being in equipoise, the duration of the marriage marks the defining distinction between whether permanent alimony or limited duration alimony is warranted and awarded." Id. at 483, 762 A.2d 1040.
Thus, limited duration alimony represents a form of limited spousal support for a specified purpose, namely to provide economic assistance for a restricted period of time. Gordon v. Rozenwald, 380 N.J.Super. 55, 65, 880 A.2d 1157 (App. Div.2005). "The length of a term of limited duration alimony is based primarily upon the historical facts of the marital enterprise, not predictions about future events as is a term of rehabilitative alimony." Id. at 67, 880 A.2d 1157. Once the purpose and duration of limited duration alimony are achieved, entitlement thereto ceases.
To vacate a trial court's finding concerning alimony, we must conclude that the trial court clearly abused its discretion or failed to consider all of the controlling legal principles, or we must otherwise be satisfied that the findings were mistaken or that the determination could not reasonably have been reached on sufficient credible evidence present in the record after considering all of the proofs as a whole. Rolnick v. Rolnick, 262 N.J.Super. 343, 360, 621 A.2d 37 (App.Div.1993) (internal citations omitted). See also Reid v. Reid, 310 N.J.Super. 12, 22, 708 A.2d 74 (App. Div.), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998); Heinl, supra, 287 N.J.Super. at 345, 671 A.2d 147. "[F]ailure to consider all of the controlling legal principles requires a remand." Boardman v. Boardman, 314 N.J.Super. 340, 345, 714 A.2d 981 (App.Div.1998).
Measured against this standard, we conclude that the trial court erred in its alimony decision in two respects: (1) in denying defendant's request for termination, the judge miscalculated both plaintiff's increased income and defendant's legitimate living expenses; and (2) in extending the durational time, the judge failed to articulate why the heightened statutory standard of "unusual circumstances" had been satisfied or why the purpose of the original arrangement could not be fulfilled.
As to plaintiff's actual financial need and dependency, the court never reconciled conflicting evidence in the record. Rather, it simply determined plaintiff's weekly income to be $530, presumably based on a *51 CIS in which she reports her year-to-date gross earned income to be $19,653.57 for the first ten months of 2006. Yet, other evidence suggests she made $36,341.07 in gross earned income in 2005, and her September 1, 2006 CIS reports an average gross weekly income for 2006 to be $846, with a net of $650.43. Moreover, in plaintiff's 2007 tax returns, she claimed $53,217 in total wages, exclusive of alimony, and $58,019 in total income, which averages $1115 per week. Thus, the $530 amount employed by the trial judge  material to the issue of whether to terminate alimony due to plaintiff's increased earning capacity  lacks sufficient support in the record.
Equally lacking in support is the court's estimate of defendant's living expenses at under 2000 pesos per month, which is well below the monthly amount (3500 pesos) represented in defendant's CIS, which appears to be the only relevant evidence on this score. That document lists Schedule A expenses at $474; Schedule B expenses as $70; and Schedule C expenses as $624, excluding support payments, for total monthly expenses of US$1168, which, multiplied by a 3.05 exchange rate, equals 3562 pesos. In addition to these expenses, defendant's CIS also lists tax payments in Argentina of US$405 per month, which, at a 3.05 exchange rate, is about 1235 pesos. Moreover, defendant has support obligations of US$244 per week, or US$1049 per month, which, at a 3.05 exchange rate, equals about 3199 pesos per month, and must also pay plaintiff an average of about 800 pesos per month in expenses for his children not included in child support. Thus, at an exchange rate of 3.05, defendant's total monthly expenses, including all support obligations, are claimed to be about 8796 pesos, which exceeds his monthly earnings of 7000 pesos.
Despite no evidence suggesting defendant's expenses are unreasonable, the court simply found that defendant's "Case Information Statement shows that he really need[s] less than 2000 pesos to live." This conclusionary statement, however, is bereft of any explanation detailing which, if any, of defendant's living expenses were found to be unreasonable. Given that the aggregate of defendant's claimed monthly expenses greatly exceeded his actual earnings and therefore significantly implicated his ability to pay any amount of alimony, N.J.S.A. 2A:34-23(b)(1), we find the court's failure to reconcile its findings with the record proof to be reversible error.
The absence of adequate fact-findings as to plaintiff's income and defendant's expenses is compounded by a misapplication, in our view, of the principles of limited duration alimony. In this regard, there is a presumption that the temporal aspect of such an arrangement be preserved. Gordon, supra, 380 N.J.Super. at 70, 880 A.2d 1157. That presumption is premised upon the "principle that the parties to a dispute are in the best position to determine ... [the] least disadvantageous resolution and fashion an arrangement that meets their particular needs." Ibid. (internal citations omitted). In fact, before modifying the length of the term of a limited duration alimony award, a heightened statutory standard of "unusual circumstances" must be met:
An award of alimony for a limited duration may be modified based either upon changed circumstances, or upon the nonoccurrence of circumstances that the court found would occur at the time of the award. The court may modify the amount of such an award, but shall not modify the length of the term except in unusual circumstances.

[N.J.S.A. 2A:34-23(c) (emphasis added).]
*52 Here, for reasons not altogether clear, the court "did not find it equitable to terminate Defendant's alimony obligation in toto[,]" or even reduce the aggregate balance, but instead chose to lower the monthly rate, substantially extending the term of payment. In doing so, the judge converted a temporary arrangement originally fashioned by the parties to meet their particular needs into one of more lasting duration. Not only does this modification contravene the specific need for, and purpose of, limited duration alimony, it is unsupported by any articulated, sustainable reason, much less "unusual circumstances." On this score, we do not view defendant's changed circumstances as any more unusual than the ordinary case of diminished earnings capacity. While that fact might well meet the Lepis standard to warrant a reduction in the quantum of alimony, we find it falls short of the heightened statutory standard required to expand its durational term.
In sum, the absence of adequate findings necessitates a reversal to allow the trial judge to reconsider the alimony decision. On remand, there should be a full consideration of the continuing need for limited duration alimony, or its modification, applying the standard of N.J.S.A. 2A:34-23, with full explication of the judge's reasoning. Should limited duration alimony be continued after such a review, the amount set must be based on all relevant statutory factors including defendant's ability to pay and plaintiff's need. All other aspects of the June 29, 2007 order are affirmed.
Affirmed in part; reversed in part; and remanded for further proceedings consistent with this opinion.
NOTES
[1] The H-1B visa program is used by U.S. businesses to employ foreign workers for a period not to exceed seven years in specialty occupations that require theoretical or technical expertise in a specialized field. As part of the program, the Department of Homeland Security requires U.S. employers to meet specific labor conditions to ensure that Americans are not adversely affected by foreign workers. An H-1B visa is temporary and issued for an initial term of three years, at the completion of which extensions for an additional three years may be obtained. While there is an opportunity for a seventh year, the petitioning company must file an I-140 petition for a Labor Certification (LCA), which, if approved, would result in the beneficiary employee obtaining permanent residence status.
[2] In fact, the PSA acknowledged in Article III that defendant "is no longer free to remain in the United States and is compelled to return to Argentina."
[3] Defendant's last day of his H-1B visa was February 4, 2006.
[4] Defendant's employment with Estudio O'Farrell was terminated during the plenary hearing but the court nonetheless imputed income to defendant of 7,000 pesos (US$2,295) per month.
[5] At the plenary hearing, defendant neither objected to this percentage nor objected to his obligation to reimburse plaintiff, as clearly set out in the PSA.
[6] The PSA provides that defendant will have custody two consecutive weeks out of the year, and in alternate years, an additional one week between Christmas and New Year's Day.
[7] Indeed, the PSA itself recognizes that: "the parties acknowledge the Husband has the right to file a post-judgment motion for a determination pursuant to current New Jersey law [as to] whether a significant change in circumstance has occurred which would warrant a modification."