**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0507-19

M.M.,[1]

    Plaintiff-Respondent,

v.

M.W.,

    Defendant-Appellant.

_____

        Argued November 8, 2021 – Decided December 21, 2021

        Before Judges Vernoia and Firko.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FD-14-0482-07.

        M.W., appellant, argued the cause pro se.

        Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials to protect the identity of the parties and to preserve the confidentiality of these proceedings based on our February 10, 2021 order granting defendant's motion to proceed anonymously.

In this non-dissolution matter, defendant M.W., father, appeals from an October 16, 2019 order denying his application for reconsideration of an August 20, 2019 order entered by the Family Part denying his Rule 4:50-1 application for retroactive reduction of his child support obligation. Defendant contends plaintiff M.M., mother, misrepresented her income in prior proceedings and that newly discovered information surfaced about her income and employability. Defendant also appeals from a May 14, 2019 order denying his application to retroactively modify the December 5, 2012 order determining his child support obligation, amending accrued arrears, and modifying his obligation based upon the parties' child entering college. Defendant also appeals from the December 12, 2017 order quashing subpoenas served upon plaintiff's husband, A.M., and his ex-wife.

For the reasons that follow, we dismiss the appeals from the Family Part's May 14, 2019 and December 12, 2017 orders as untimely, and affirm the court's orders of August 20 and October 16, 2019, substantially for the reasons expressed by Judge Ralph E. Amirata.

I.

This matter comes before us again. The parties are familiar with the procedural history and facts of this case, and therefore, they will not be repeated

2

in detail here. M.M. v. M.W., No. A-2143-13 (App. Div. Sept. 29, 2015) (slip op. at 2-10). The following facts taken from the record are pertinent to our review. The parties' daughter was born in Brazil in February 2001 and lived there with plaintiff for approximately two years. In or about 2004, plaintiff moved to the United States, and in 2005 defendant brought the child from Brazil to live with her paternal grandparents in Wisconsin. A stipulation was entered in the State of Wisconsin granting the parties joint legal custody of their child, with primary residence being defendant's home in New York. In 2006, plaintiff married A.M., and the parties agreed to transfer residential custody of the child to plaintiff, who was then residing in Randolph.

In September 2007, defendant was ordered to pay $432 per week in child support to plaintiff, retroactive to May 23, 2007. Defendant's child support obligation was calculated using the $356,096 salary he received from his employment in the banking industry in 2006 and plaintiff's imputed salary of $29,016.

In October 2008, defendant filed an application for a downward modification of his support obligation after becoming unemployed. On March 20, 2009, a plenary hearing was held on defendant's application before a prior Family Part judge. On March 30, 2009, the prior judge denied defendant's

3

application, finding that he had not met his burden of establishing a permanent substantial change of circumstances as required by Lepis v. Lepis, 83 N.J. 139 (1980). Despite this finding, the judge ordered that defendant would only be required to pay $204 in child support per week until December 31, 2009, although arrears would continue to accrue on the full $432 obligation.

In June 2010, defendant again moved for a downward modification of his child support obligation. The judge found defendant provided sufficient evidence of a change in circumstances, and on August 9, 2010, the judge ordered that defendant should be imputed an income of $80,000 per year based on a "fair and accurate" assessment of his current earning potential. The judge decreased defendant's child support payment to $180 per week, plus $45 per week to be paid towards his arrears, retroactive to June 7, 2010.

In September 2012, defendant again filed an application for reduction of his child support obligation and sought to reduce the income imputed to him from $80,000 to $40,000. Plaintiff opposed the application, arguing that based on defendant's work history and education—a bachelor's degree from the University of Wisconsin and an MBA from the University of Chicago—he was "more than capable of earning an annual income of $80,000." Defendant certified in addition to his unemployment, his financial resources were

completely depleted due to paying for other litigation expenses, and that he was living with his mother because he was unable to afford rent.

On December 5, 2012, the judge assigned to the matter issued an order and statement of reasons granting defendant's application, in part. The judge found that defendant was unemployed at the time of the hearing but planned to start a job in 2013 with Edward Jones as a retail financial advisor with a guaranteed income of $40,000 per year. The judge also found it was "clear that [d]efendant is more than a $40,000[] earner; however, his current circumstances, i.e. he is unable to afford rent or health insurance, necessitate a reduction in [his] child support obligation." Defendant's imputed income was reduced to $60,000, and the judge recalculated child support at $151.00 a week, with an effective date of September 27, 2012.

On January 22, 2013, defendant filed an application for reconsideration of the December 5, 2012 order as well as "multiple [o]rders dating back to 2009 seeking a retroactive recalculation of child support based on alleged errors made by three separate [j]udges with regards to calculating his income." The judge entered an order and supporting statement of reasons on August 15, 2013, denying defendant's application, finding his claims were "meritless" and "nothing more than [an] attempt to relitigate issues that have long been decided."

A-0507-19

The decision highlighted the motion was filed beyond the twenty days of the final order as required by Rule 4:49-2, and therefore, untimely.

The judge also granted plaintiff's cross-applications and ordered, among other things, that defendant would provide his 2012 income tax return to her and authorize her to verify his wages with the Social Security Administration. The judge found defendant had "been, at the very least, evasive about his income," and ordered that failure to comply with either demand would "result in an imputation of income to [defendant] in the amount of $100,000." The order also directed both parties to submit financial information to the court and directed a hearing officer to review the submissions and recalculate defendant's child support obligation.

Another Family Part judge heard the matter on October 4, 2013, at which time defendant did not appear and had not submitted the financial information required by the previous order. In accordance with the December 5, 2012 order, the judge imputed an income of $100,000 to defendant, and $34,000 to plaintiff, who was unemployed at the time. Using the imputed wages, the judge calculated defendant's child support obligation to be $311 per week effective June 11, 2013. The order stated that the judge deviated from the child support guidelines "for good cause as determined by the court."

A-0507-19

On December 5, 2013, another judge considered a new application filed by defendant for downward modification of his child support obligation, as well as another application for reconsideration of the January 22, 2013 order. Defendant argued the August 15, 2013 order was based on the court's "mistaken impression" that he was employed making more than $100,000, while in fact he was only employed from March to May 2013.

The judge denied defendant's application for reconsideration of the January 22, 2013 order, finding it was "considerably out of time," and noting that even if it had been filed timely, defendant failed to submit the information necessary to reconsider the prior order. The judge also denied defendant's application for a downward modification, noting that based on his work history and level of education, $311 was a "modest order of child support."

Defendant appealed the December 5, 2013 order, arguing in pertinent part: (1) the judge erred by refusing to consider the January 2013 application for reconsideration; and (2) the judge erroneously denied his application for a downward modification of his child support obligation. M.M., slip op. at 10,12. We agreed that defendant's application for reconsideration was untimely, and therefore "the decisions memorialized by the December 5, 2012 order were final and not subject to further review by appeal or reconsideration." Id. at 12.

A-0507-19

In addition, we concluded that the judge did not abuse his discretion by ordering defendant to pay $311 per week in child support because "defendant's education, work experience and prior earnings history," coupled with his failure to produce certain financial documents in accordance with the court's prior orders, supported the judge's decision to impute income to defendant of $100,000. Id. at 14.

In June 2017, defendant again applied for a downward modification of his child support obligation. On August 24, 2017, a judge conducted a hearing. Defendant asserted that plaintiff, and various other parties, had not complied with his discovery requests and subpoenas to submit to depositions. The judge granted a thirty-day extension in the matter so that defendant could conduct depositions and conduct any relevant discovery, but not embark on "a fishing expedition."

On December 12, 2017, the parties appeared in court on an application by plaintiff's husband A.M. to quash a subpoena issued to him by defendant. A.M. argued that defendant's inquiries were unrelated to defendant's child support arrears, and instead were a "witch hunt" intended to harass and embarrass plaintiff and himself. The judge agreed, and quashed the subpoena, finding it was not "intended to produce evidentiary materials, but merely is a fishing

expedition" designed to gather information that is not relevant to the child support obligation in dispute such as plaintiff's husband's E-ZPass records, and information about domestic issues in his past.

On February 21, 2018, the parties appeared before a prior judge for a case management conference. The judge ordered plaintiff to disclose certain financial documents, such as pay stubs, to defendant regarding her job as an insurance agent beginning in the summer of 2017 prior to her deposition, which was scheduled for March 14, 2018. In addition, the judge ordered plaintiff to submit her federal and state tax returns from 2013 to the present to the court for an in camera review. The judge also ordered that the scope of plaintiff's deposition would be "strictly limited to [her] income and earnings capacity for calculation of an appropriate child support amount."

On May 22, 2018, the parties appeared for another case management conference to discuss outstanding discovery issues. The judge issued an order on May 25, 2018, directing that no further discovery was to occur unless authorized by a court order. And, the judge ordered defendant to file a certification, no later than June 22, 2018, detailing each discovery request he propounded on plaintiff, or any non-party, since December 12, 2017. The order provided that failure to comply may result in monetary or other sanctions.

9

On December 5, 2018, the parties appeared for another case management conference. Defendant still had not submitted the court-ordered certification. On May 14, 2019, the parties appeared before Judge Amirata for a hearing on defendant's applicaitons to: (1) retroactively modify the December 5, 2012 determination of his child support obligation and amend the accrued arrearages; and (2) modify defendant's child support obligation based on the changed circumstance that the child would soon be a full-time college student.

Defendant argued that in the December 2012 order, the prior judge was correct in finding defendant was involuntarily underemployed for the five years following the financial crisis in 2008 and properly imputed to him a salary of $60,000. He also argued the judge erred by considering a certification submitted by plaintiff suggesting that defendant was employed by U.S. Bank in 2013. Judge Amirata pointed out to defendant that he had the ability to appeal the order in 2012, and in fact he did appeal, unsuccessfully, the imputation of $100,000 in 2013. In response, defendant asserted that the decisions of the prior judge and the Appellate Division were erroneous because they imputed to him a sizeable salary based on his failure to produce a paystub despite it "materially impossible" to do so. He also argued he was only employed at U.S. Bank for ten weeks in 2013, and that the litany of difficult employment circumstances he

has had to face certainly warranted the finding of a permanent material change in circumstances and modification of his child support obligation.

Defendant also asserted plaintiff committed a fraud upon the court, which led to an erroneous calculation of his child support obligation and warranted the court's consideration of these prior orders despite the considerable amount of time that had passed. Specifically, defendant contended plaintiff had been working as a registered insurance salesperson since 2012 and had concealed her employment and "substantial income" from the court.

Judge Amirata found that defendant's allegations were not supported by the evidence. The judge noted that the computations had been upheld upon reconsideration by the Family Part, and then affirmed by this court. Nothing compelling was presented in the judge's view to warrant revisiting prior orders. In his decision, the judge acknowledged defendant's difficult history with involuntary unemployment. However, the judge highlighted defendant's recent decision to attend law school was a voluntary decision, and ultimately found that the determinations of the prior courts were appropriate.

Regarding the cost of the child's college tuition, defendant asserted that she was receiving $65,000 in financial aid from her university, out of a total estimated tuition of $74,000 per year. Defendant indicated he paid for a

11

substantial portion of his own undergraduate education, and that he believed his daughter could pay for the difference between her financial aid and the total cost of tuition by taking on a job during school or borrowing money. He asked the court to consider his own financial circumstances, as well as the expense of the private school she chose to attend rather than a public college.

Plaintiff responded by noting the child had worked hard in school, athletics, and extracurriculars to earn the scholarships that were helping to fund her education, despite little support from defendant. The financial aid package already included a work-study program that the child would be participating in to earn money towards her tuition. Plaintiff also stated that she was willing to split the remaining balance of approximately $13,000 with defendant.

The judge applied the Newburgh[2] balancing test to determine whether the parents should be required to contribute to the cost of their daughter's post-secondary education costs. After applying the test, the judge found both parties were responsible for contributing to her education; each parent would be responsible for twenty-five percent of the tuition balance, and that their daughter would be responsible for fifty percent of the tuition balance.

---

[2] Newburgh v. Arrigo, 88 N.J. 529, 545 (1982).

A-0507-19

Judge Amirata next analyzed whether the child's transition to a full-time college student constituted a change of circumstances that required modification of the child support obligation going forward. The judge noted that although the child would be away at college, she would still require financial support for "the amount of additional expenses that college brings," including health insurance costs. Based on this determination, the judge found that the prior child support obligation was appropriate and would continue at $323 per week.

On August 20, 2019, the parties appeared before Judge Amirata for a hearing on two applications brought by defendant. The first one sought reconsideration of the court's May 14, 2019 order, which denied defendant's application to modify the 2012 child support order and reduce his resulting arrears. The second application sought emancipation and modification of the child support obligation.

Defendant reiterated his argument that plaintiff misrepresented her employment and financial situation to the court dating back to 2012. He argued plaintiff failed to list certain professional licenses on her case information statements (CIS), and alleged that she continued working as an exotic dancer beyond when she told the court she had stopped. The judge reminded defendant several times that the reconsideration hearing only pertained to the May 2019

A-0507-19

order, but he continued to assert that based on plaintiff's alleged fraud, he was entitled to relief under Rule 4:50-1.[3]

Defendant argued that if he could have discovery of plaintiff's E-ZPass records, and if they revealed she traveled back and forth to New York City, then the court could infer she was still employed at the club where she had previously worked as an exotic dancer. Defendant further argued that based on a paystub from 2017, which he argued showed an annualized income of $88,000 for plaintiff, the judge should impute that salary to her dating back to 2012 when

---

[3] Rule 4:50-1 provides for "Relief From Judgment On Order" and states:

> On motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under R[ule] 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.

she first received her insurance agent licenses rather than the $33,000 she was originally imputed.

In his decision, Judge Amirata found defendant had not presented any new evidence or arguments regarding the imputation of income to the parties that had not been addressed by prior orders and numerous prior courts. In addition, the judge held no competent evidence was submitted to support defendant's allegations of fraud or misrepresentation against plaintiff, or to allow for an additional "fishing expedition." Furthermore, the judge found defendant failed to submit any evidence that had not been considered in the court's May 14, 2019 order regarding contribution to the child's college expenses.

However, as part of his reconsideration, the judge recalculated the child support obligation established in the May 14, 2019 order and found there was a computation error. The judge re-ran "the calculations based on the child support guidelines, specifically the child support guidelines of 2019," and modified the child support amount to $242 weekly, as well as $50 towards arrears, with an effective date of April 1, 2019.

Next, the judge denied defendant's application for emancipation, finding that the parties' daughter was a full-time student in a post-secondary education program and under N.J.S.A. 2A:17-56.67(b), qualified for continued child

support until the program ended or until she attained the age of twenty-three. Despite ruling against emancipation, the judge did find that once the parties' daughter went away to college, the financial burden on plaintiff's custodial expenses would lessen as the child would be living on campus and participating in a meal plan. Based on this change of circumstance, the judge ordered that effective September 1, 2019, when the daughter moved away to college, the child support obligation would be modified downward to $121 per week.

On October 15, 2019, the parties appeared before Judge Amirata on what was akin to an application for reconsideration of the court's August 20, 2019 order. Defendant argued there were "clerical errors" in the order that impacted the computation of his child support obligation. He first argued that the judge had imputed an income of $30,000 to plaintiff, when all prior orders had imputed an income of $33,000. Additionally, he asserted that the calculation used had zeroed out his parenting time.

In addition to these errors, defendant renewed his argument there was a "historical clerical error" used to impute the $33,000 income to plaintiff in 2012, and that she should have been imputed a salary as an insurance agent once she received her licenses in 2012. Plaintiff acknowledged she was licensed in 2013, but that she did not work as an insurance agent but rather did some work for her

A-0507-19

husband's insurance agency part-time while primarily staying home to take care of the child.

On October 16, 2019, the judge granted defendant's application for reconsideration, in part, finding that the court had inaccurately used $30,000 as plaintiff's imputed salary when it should have used $33,000 as imputed by the prior court orders. Additionally, the judge had previously failed to include fifty-two days of parenting time that defendant should have been credited with on the worksheet. Therefore, the judge modified his previous order retroactive to April 1, 2019. The judge also determined the arguments made by defendant that the court should retroactively impute an $88,000 salary to plaintiff dating back to 2012 were not supported by competent evidence or testimony. And, the judge found plaintiff was a "credible" witness, and that her testimony on multiple occasions regarding her employment history was consistent. Defendant's application was granted, in part, modifying the child support obligation to reflect the clerical errors in the August 20, 2019 order. All other prayers for relief were denied. This appeal followed.[4]

---

[4] On November 12, 2019, we accepted defendant's second amended notice of appeal for filing.

Defendant presents the following issues for our consideration: (1) the judge erred and denied him procedural and substantive due process of law by failing to make adequate findings of fact by failing "to place [plaintiff]'s professional licenses, income, employment, and education facts on the record," in violation of Rule 1:7-4(a)[5]; (2) under Lepis, the judge deprived defendant of his Fifth and Fourteenth Amendment rights by "[g]rant[ing] [n]one of the [defendant]'s [d]iscovery requests yet grant[ing] [a]ll of [plaintiff]'s [d]iscovery requests in determining child support obligations"; and (3) the interstate enforcement of arrears under the Uniform Interstate Family Support Act (UIFSA), N.J.S.A. 2A:4-30.124 to -30.201, violates the commerce clause when the court "finds [defendant] involuntarily underemployed for a period of five years, overlooks [plaintiff]'s concealment of substantial and illicit earnings for fifteen years, and concedes, on the record, substantial calculation clerical errors

---

[5] Rule 1:7-4(a) provides for "required findings" by the court in non-jury trials and on motions and states:

> The court shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon in all actions tried without a jury, on every motion decided by a written order that is appealable as of right . . . . The court shall thereupon enter or direct the entry of the appropriate judgment.

in favor of [plaintiff]." Defendant asserts that because the judge imputed "wages to the parties without just cause and sufficient findings of fact," enforcing the arrears under UIFSA "on an interstate basis run[s] afoul of the [c]ommerce [c]lause and" is unconstitutional.

## II.

Our review of Family Part orders is generally limited. Cesare v. Cesare, 154 N.J. 394, 411, 413 (1998). We "accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare, 154 N.J. at 413). Generally, "findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare, 154 N.J. at 411-12 (citing Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). We will not disturb the factual findings and legal conclusions unless convinced they "are 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Ricci v. Ricci, 448 N.J. Super 546, 564 (App. Div. 2017) (quoting Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015)). Challenges to legal conclusions, as well as a trial court's interpretation of the

A-0507-19

law, are subject to de novo review.  Id. at 565 (citing Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

Defendant appeals from four orders entered on December 12, 2017, and on May 14, August 20, and October 16, 2019.  According to defendant, these four orders should be modified or vacated by this court based on "clerical errors" pursuant to Rule 1:13-1, and plaintiff's "fraud" under Rule 4:50-1.  He seeks an elimination of his arrearages or alternatively, a "substantial disgorgement" from plaintiff for previously paid child support payment to her.

As to the December 12, 2017 and May 14, 2019 orders, defendant's appeal must be rejected as untimely.  "An appeal from a final judgment must be filed with the Appellate Division within forty-five days of its entry . . . ."  Lombardi v. Masso, 207 N.J. 517, 540 (2011) (citing R. 2:4-1).  Rule 2:4-4(a) permits a maximum thirty-day extension of time, but only if the notice of appeal was actually "filed within the time as extended."  See id. at 540-41.  Rule 2:4-1 limits the scope of this court's jurisdiction and authority, In re Christie's Appoint. of Perez as Pub. Member 7 of Rutgers Univ. Bd. of Govn'rs, 436 N.J. Super 575, 584 (App. Div. 2014) (citation omitted), and "[w]here the appeal is untimely, the Appellate Division has no jurisdiction to decide the merits of the appeal,"

20

Ricci, 448 N.J. Super. at 565 (quoting In re Hill, 241 N.J. Super. 367, 372 (App. Div. 1990)).

The forty-five-day period is tolled while a motion for reconsideration is pending regarding the order from which the party seeks to appeal. See R. 2:4-3(e) (stating that the period for filing an appeal is tolled "[i]n civil actions . . . by the timely filing and service of a motion to the trial court . . . for rehearing or reconsideration seeking to alter or amend the judgment or order pursuant to [Rule] 4:49-2"). Once a determination is made on the motion to reconsider, the forty-five-day period does not begin anew, rather, the time remaining "shall again begin to run from the date of the entry of an order disposing of such a motion." Ibid.

The December 12, 2017 order resolved all issues raised by defendant relative to subpoenas served upon plaintiff's husband and his ex-wife. Defendant did not file a timely motion for reconsideration of this order, and therefore, no tolling applies. The order completely disposed of defendant's attempt to obtain financial and other information from third parties and "reserve[ed] no further question, decision, or direction for future determination." Adams v. Adams, 53 N.J. Super. 424, 429 (App. Div. 1959) (citations omitted). Moreover, no "further steps [were required] . . . to enable the court to adjudicate

21

the cause on the merits." Ricci, 448 N.J. Super. at 565 (second and third alterations in original) (quoting Moon v. Warren Haven Nursing Home, 182 N.J. 507, 512 (2005)). Thus, the December 12, 2017 order is a final order, and the appeal should have been filed within the forty-five days prescribed in Rule 2:4-1(a) or January 26, 2018. See, e.g., Adams, 53 N.J. Super. at 428-29. We therefore dismiss defendant's appeal from the December 12, 2017 order.

The May 14, 2019 order was also not timely appealed. This order denied defendant's application to modify his child support obligation and retroactively modify the 2012 child support order and resulting arrears. Following defendant's application for reconsideration, which was filed on May 31, 2019, the judge's order dated August 20, 2019, which granted reconsideration, in part, started the clock running again for the time to appeal. Defendant's remaining twenty-eights days to appeal the May 14, 2019 order expired on September 17, 2019. Defendant filed his original notice of appeal on October 2, 2019, an amended notice of appeal on October 17, 2019, and his second amended notice of appeal on November 12, 2019.[6] We therefore dismiss defendant's appeal from the May 14, 2019 order.

---

[6] Defendant's original and amended notice of appeal are not included in his appendix in violation of Rule 2:6-1(a)(1)(F).

## III.

Defendant's second issue on appeal regarding discovery rulings made by Judge Amirata lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We add the following remarks.

"The discovery rights provided by [the] court'[s] rules are not instruments with which to annoy, harass or burden a litigant . . . ." Gensollen v. Pareja, 416 N.J. Super. 585, 591 (App. Div. 2010) (citing R. 4:10-3); see also Hickman v. Taylor, 329 U.S. 495, 507-08 (1947) (recognizing "limitations inevitably arise when it can be shown that [discovery inquiries are] being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry" (alteration in original)).

Pretrial subpoena powers "are governed by Rule 4:14-7, which permits the issuance of that process with very strict limitations." Welch v. Welch, 401 N.J. Super. 438, 444 (Ch. Div. 2008). The power to issue a subpoena "for purposes of discovery 'is a significant one which must be exercised in good faith and in strict adherence to the rules to eliminate potential abuses.'" Id. at 444-45 (quoting Cavallaro v. Jamco Prop. Mgmt., 334 N.J. Super. 557, 569 (App. Div. 2000)). Because of the nature of matrimonial and family law, "the emotions and

tensions run higher, the dangers of abuse are greater, and there is particular likelihood of oppression." Ritt v. Ritt, 52 N.J. 177, 179 (1968).

"When the burdens outweigh the benefits the tools of discovery become, intentionally or unintentionally, weapons of oppression. This possibility . . . deserves close scrutiny with respect to the interests of a nonparty." Berrie v. Berrie, 188 N.J. Super. 274, 282-83 (Ch. Div. 1983). Each determination "to allow or restrict discovery is addressed to the discretion of the court and requires a balancing of these considerations." Id. at 283.

Here, the judge clearly articulated his findings—the subpoenas served by defendant on plaintiff's husband and his ex-wife were "oppressive," and "in the [c]ourt's opinion, geared towards embarrassing the various individuals that they're being served upon, especially [plaintiff's husband] . . . ." And, the judge added any benefit obtained from the discovery sought, "is absolutely outweighed by the inconvenience, oppressiveness, [and] embarrassment" that plaintiff and her husband would suffer. The judge was correct in his analysis. Moreover, the judge also clearly stated that defendant's subpoenas to depose an attorney he had hired in a loan dispute with his biological mother, and plaintiff's husband's ex-wife were quashed, as the inquiries did not pertain to relevant discoverable evidence regarding the child support claim under review.

Finally, the judge denied defendant's application to compel discovery of records from the parties' daughter's therapy sessions in 2006, as well as plaintiff's E-ZPass records dating back to 2006. The judge found that these records would not contain relevant evidence of plaintiff's current financial information needed to calculate child support and would again amount to "a fishing expedition at best." Our careful review of the record reveals the judge clearly articulated adequate findings on the record to support his denial of defendant's discovery requests pursuant to Rule 1:7-4(a). The judge's findings were not "'manifestly unjust' under the circumstances," and therefore, his determination was within his discretion. Newark Morning Ledger Co. v. N.J. Sports Exposition Auth., 423 N.J. Super. 140, 174 (App. Div. 2011) (quoting Union Cnty. Improvement Auth. v. Artaki, LLC, 392 N.J. Super. 141, 149 (App. Div. 2007)).

IV.

We now turn to the two orders under review—August 20 and October 16, 2019.

A. The August 20, 2019 Order

The court's August 20, 2019 order granted defendant's application for reconsideration, in part, reducing his child support obligation to $242 per week,

25

effective April 1, 2019. The order also denied defendant's application to emancipate the parties' child and ordered that child support would continue until she completed secondary school or turned twenty-three years old. However, to reiterate, based on the change in circumstances once she began attending college as a full-time student, the order also provided that defendant's obligation would be reduced to $121 per week once she began living on campus September 1, 2019.

Regarding reconsideration, Judge Amirata once again denied defendant's application to reconsider prior orders of the court dating back to 2012, including requests for reconsideration of the denial of defendant's 2015 appeal and reconsideration of the court's 2017 denial of defendant's discovery requests. The judge found defendant had not produced any new evidence or arguments that weren't previously considered by the court in the May 2019 order. Rule 4:49-2 provides that reconsideration is warranted only when "(1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Granata v. Broderick, 446 N.J. Super. 449, 468 (App. Div. 2016) (quoting Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002) (quoting D'Atria v. D'Atria, 242 N.J.

Super. 392, 401 (App. Div. 1990)). We conclude the judge properly found defendant's presentation of the same arguments failed to meet his burden of showing "the [c]ourt acted in an arbitrary, capricious, or unreasonable manner" in the previous orders. Palombi v. Palombi, 414 N.J. Super. 274, 289 (App. Div. 2010) (quoting D'Atria, 242 N.J. Super. at 401)).

However, the judge did, upon reevaluation of the submissions, candidly note he applied the wrong child support guidelines. Therefore, the judge recalculated the support obligation using the 2019 version. The judge determined that defendant's revised child support would be $242 weekly, with the $50 additional amount towards arrears remaining unchanged.

Regarding emancipation, the judge relied on N.J.S.A. 2A:17-56.67(b)(1)(b), which states that a parent may submit an application "seeking the continuation of child support services beyond the date the child reaches [nineteen] years of age in the following circumstances . . . (b) the child is a student in a post-secondary education program and is enrolled for the number of hours or courses the school considers to be full-time attendance . . . ." Based on the undisputed fact that the parties' daughter would be attending college full-time, which defendant concedes, the judge denied defendant's application for emancipation. The judge correctly applied the law on this issue. Moreover, the

27

judge complied with <u>Rule</u> 1:7-4(a), relied on undisputed facts reaching the determination on emancipation, and articulated clear factual support and reasons for his partial of reconsideration. Therefore, we see no basis to disturb the judge's decision.

### B. The October 16, 2019 Order

Finally, relative to the October 16, 2019 order, the judge once again refused to modify defendant's arrears dating back to 2012 because his application for reconsideration was untimely and the issues raised had been addressed by previous orders. Defendant argued the judge should reconsider the historical orders due to "clerical errors" that were identified by the judge in the previous order. According to defendant, his child support amount should have been $189 per week, and he sought to have his arrears retroactively modified to correct the alleged clerical error dating back to 2007. Defendant cited to an unpublished case in support of his argument. [7]

The judge granted the application for reconsideration in part, finding that in the previous calculation the court used $30,000 as the imputed salary for plaintiff when historically her salary had been imputed at $33,000. Further, the

---

[7] <u>See</u> <u>R.</u> 1:36-3 ("No unpublished opinion shall constitute precedent or be binding upon any court.").

judge noted that he erred by inadvertently eliminating fifty-two days of credit defendant should have received for exercising parenting time and modified defendant's child support obligation pursuant to Rule 1:13-1 based on clerical errors retroactive to April 1, 2019. The judge's decision was based upon substantial credible evidence in the record.

Further, we note when an allegation of unreported income is asserted in an application for the imputation of income, the burden is on the requesting party to "provide sufficient evidence to support the allegation . . . by proving actual concealment or establishing the obligor lives a lifestyle that is 'so disparate compared to his reported income to necessitate further inquiry.'" Gonzalez-Posse v. Ricciardulli, 410 N.J. Super. 340, 351 (App. Div. 2009). "Mere allegations of unreported income are insufficient grounds on which to impute income." Ibid. We have no reason to second guess those or any other findings made by Judge Amirata.

V.

We now briefly address defendant's constitutional challenge to UIFSA. Defendant argues the judge excluded his constitutional authority by enforcing arrears under UIFSA because of "commerce clause limitations." Again, we disagree.

"UIFSA governs jurisdiction over the establishment, modification, and enforcement of a child support order when at least one of the parties to the action in which support is requested lives outside of the [s]tate." Fall & Romanowski, Current N.J. Family Law, Child Custody, Protection & Support, 645 (2021). "To avoid jurisdictional competition and conflicts, each state . . . has adopted the [UIFSA] in accordance with federal mandates." Ibid. (citing 42 U.S.C. § 666(f)). "In New Jersey, UIFSA is codified at N.J.S.[A]. 2A:4-30.124 [to] -30.201 . . . ." Ibid. Under UIFSA, the state that issues a valid order of support first has "'continuing exclusive jurisdiction' over that order for so long as the obligor, the individual obligee, or the child for whose benefit the order is issued to continue to reside there." Id. at 647 (citing N.J.S.A. 2A:4-30.133(a)(1)).

Defendant cites an unpublished case, United States v. King, No. S1 00 Cr. 653, 2001 U.S. Dist. LEXIS 1120 (S.D.N.Y. Feb. 8, 2001), in support of his claim that UIFSA is unconstitutional as applied to him because it ostensibly exceeds Congress's power to regulate commerce among the states. In King, the District Court dismissed the defendant's indictment for failing to pay child support reasoning that the Child Support Recovery Act (CSRA), 18 U.S.C. § 228(a)(3), violated the Tenth Amendment to the U.S. Constitution, "because it exceed[ed] Congress's power to regulate commerce among the states pursuant

to Article I, Section 8, of the United States Constitution" [(the Commerce Clause)]. <u>King</u>, slip op. at 7.

Putting aside <u>King's</u> unpublished status, we note the holding in <u>King</u> was overturned by a panel of the Second Circuit, which found that the CSRA was in fact a constitutional exercise of Congress's Commerce Clause powers. <u>United States v. King</u>, 276 F.3d 109, 113 (2d Cir. 2002) ("[T]he obligation to pay money across state lines is a[n] [integral component] in interstate commerce, and . . . the failure to meet such an obligation can be regulated and criminalized . . . . [Consequently], the CSRA is a permissible exercise of Congressional authority under the Commerce Clause."). Similarly, the Third Circuit Court of Appeals has held that the CSRA, as amended by the Deadbeat Parents Punishment Act of 1998, Pub. L. No. 105-187, 112 Stat. 618 (1998), "clearly regulates an activity having a substantial effect on interstate commerce." <u>United States v. Kukafka</u>, 478 F.3d 531, 536 (3d Cir. 2007); <u>see also</u> <u>United States v. Parker</u>, 108 F.3d 28, 30 (3d Cir. 1997) (holding the Deadbeat Parents Punishment Act of 1998 to be a constitutional exercise of Congress's power).

Defendant also argues that enforcement of his arrears is unconstitutional based plaintiff's alleged intrinsic fraud and due process violations in the adjudication of his case. Pursuant to 42 U.S.C. § 666(a)(14)(A)(ii)(II)(bb),

31

defendant asserts enforcement orders generated by the enforcing state "shall constitute a certification by the requesting [s]tate . . . that the requesting [s]tate has complied with all procedural due process requirements applicable to each case." Similarly, he asserts that N.J.S.A. 2A:4-30.174(a)(2) allows challenges to UIFSA support orders which were "obtained by fraud."

Defendant's arguments are devoid of merit. The record clearly establishes defendant never submitted sufficient relevant evidence to support his allegations of fraud or misrepresentation by plaintiff regarding her income. And, the judge did not err by imputing defendant a $100,000 salary when he failed to comply with a court order to submit financial documents.

Moreover, we discern no error in the judge's determination that defendant was underemployed when he made the choice to attend law school rather than find a job to fulfill his child support obligation. Therefore, enforcement of defendant's child support orders was neither fraudulent nor a violation of due process under N.J.S.A. 2A:4-30.174(a)(2) or 42 U.S.C. § 666(a)(14)(A)(ii)(II)(bb), respectively.

The balance of defendant's arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Dismissed in part; affirmed in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0507-19