**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1701-18T3

JULIE STINE,

    Plaintiff-Appellant,

v.

DUNCAN CRANNELL,

    Defendant-Respondent.

_____

         Submitted November 14, 2019 – Decided  April 22, 2020

         Before Judges Alvarez and Nugent.

         On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hunterdon County, Docket No. FM-10-0440-08.

         Julie Stine, appellant pro se.

         Benbrook & Benbrook, attorneys for respondent (Allison A. Madden, on the brief).

PER CURIAM

    Plaintiff, Julie Stine, appeals from parts of a post-judgment order that reduced defendant Duncan Crannell's child support obligation, fixed the amount

of the parties' child's extraordinary expenses defendant was to reimburse plaintiff, denied plaintiff's application to compel defendant to pay child support arrears, and denied plaintiff counsel fees. Because we are unable to discern the factual basis of the trial court's opinion, we vacate the order and remand for further explication by the trial court, including a hearing and further factfinding if necessary.

The parties divorced after thirteen years of marriage. When they divorced, they were both teachers, plaintiff earning approximately $76,000 per year, defendant earning approximately $83,000 per year. Their daughter was not quite four years old.

The final judgment of divorce incorporates a property settlement agreement (PSA), which includes provisions for child support and parenting time. Plaintiff is the "primary custodial parent," and defendant is the "secondary custodial parent." According to the PSA, defendant is to have parenting time every other weekend from Friday evening through Sunday evening. The PSA also documents the parties' anticipation defendant will have additional parenting time during the week and holidays, subject to the parties' mutual schedules.

The PSA includes the following child support provision:

> The [defendant] shall pay to the [plaintiff] child support
> in the amount of $1000 per month as and for support of

> the minor child . . . . Each party's obligation to support and educate [their child] will continue through [her] emancipation . . . . Should child support be reviewed, the Guidelines attached would form the baseline for review. . . . The parties acknowledge that child support is above Guideline support in consideration of the parties['] desire that their daughter remain in the marital home. . . . Should the [plaintiff] . . . move out of the marital home, child support will be subject to review.

The PSA also provides, "[t]he parties agree that they will share the cost of any extracurricular activities for [their daughter] on a 50/50 basis."

When plaintiff sold the marital home, neither party filed a motion to revisit child support. Seven years after the parties signed the 2008 PSA, plaintiff filed a July 2015 motion ("the first motion"). She sought increased child support and an order reducing defendant's parenting time to accurately reflect the actual parenting time defendant spent with the parties' daughter, which was significantly less than that specified in the PSA.

Although the parties resolved plaintiff's first motion at mediation, they did not memorialize their agreement in writing. Nonetheless, in an April 12, 2016 email to defendant, plaintiff wrote:

> As you can tell, I am very disappointed that you have changed your mind in not allowing me to move out of state with [our daughter]. In our mediation session last summer . . . , and in our "handshake agreement" last September, we had agreed that you would not stand in my way should I find private school employment out of

3

New Jersey. I thought that we had settled up all of the points that I had put into my original motion.

In other emails, plaintiff acknowledged and referenced without objection the $900 per month child support she was receiving from defendant.

In 2017, at age fifty-five, plaintiff took an early retirement from teaching when her pension became fully vested. On May 10, 2017, plaintiff emailed defendant and requested they reevaluate child support by reexamining the child support guidelines. Defendant gave no definitive response. In December 2017, plaintiff emailed defendant and detailed their daughter's extra expenses for November. Defendant disputed many expenses, claiming they fell outside the purview of "extracurricular activity" and within the purview of child support. The dispute precipitated plaintiff's filing of the motion now before us ("the second motion").

In the notice of her second motion, plaintiff sought an order granting an upward modification of defendant's child support obligation, requiring defendant to pay $4870 in child support arrears, requiring defendant to reimburse her $3173 for his share of the cost of their daughter's extracurricular activities, and awarding plaintiff counsel fees and costs. In her certifications, she explained she was seeking an increase in child support based on the increase in defendant's income and the decrease in her income compared to their incomes

4

when they signed the PSA, as well as defendant's de facto reduction in visitation with their daughter, especially "overnights."

Plaintiff computed defendant's child support arrearages by deducting from the amount he would have paid under the PSA the amount he actually paid. Although she neither admitted nor denied she agreed to accept $900 per month during the mediation of her first motion, plaintiff insisted that because what was discussed at mediation was never reduced to writing, the court should enforce the PSA. Plaintiff pointed out a perceived discrepancy in defendant's certification: he asserted the parties agreed at mediation that he would pay $900, yet he now sought a reduction to $150 per week, despite previously referencing a child support guideline printout showing he should pay $740 per month.

Significantly, plaintiff averred that during the mediation of her first motion, she discussed with defendant her desire to retire, pursue a job in private education, and possibly relocate to another state with their child. She claims defendant agreed to these requests as part of the overall resolution of her first motion and the mediation. She argued it would be entirely unfair to resolve her second motion based on some matters defendant claimed they agreed to at mediation and were favorable to him, while overlooking other matters he agreed to that were favorable to her.

A-1701-18T3

Plaintiff based the amount she said defendant owed her for their child's extracurricular activities on the amount she billed him for the activities she deemed extracurricular, which she claimed he had paid since they signed the PSA. She claimed he had always paid for such activities. She acknowledged during oral argument that some of the extracurricular expenses would normally be subsumed within child support, but argued such payments were not unfair because he had so reduced his parenting time she now had to bear the additional cost of their child's extracurricular expenses during times the child was with her but should have been with him.

Last, plaintiff sought counsel fees because of defendant's alleged bad faith in refusing to mediate after initially agreeing to do so and after she paid the required retainer. She asserted he refused to mediate after she insisted on having an attorney represent her. He would not pay for an attorney to represent him at mediation.

Defendant filed a cross-motion seeking a decrease in his child support obligation. In his certification, defendant denied underpaying child support and contended he was overpaying child support. He noted the PSA provision acknowledging his payment of excessive child support so the parties' child could remain in the marital home, but he also noted the PSA provision for review of

6

support upon plaintiff leaving the marital home. He claimed that after plaintiff and their daughter moved from the marital home, he and plaintiff agreed to a child support reduction to $900 per month, the amount she subsequently acknowledged in a series of emails. Defendant further averred that when plaintiff learned during the 2015 mediation that child support could be further reduced, she again accepted $900 per month.

Addressing the difference in the parties' incomes, defendant noted plaintiff had voluntarily retired. According to defendant, had plaintiff continued to work, the differences in their salaries would not have been substantial, as evidenced by the salary plaintiff reported in 2015 when she filed a case information statement in support of her first motion. Defendant contended that based on the parties' current incomes, including plaintiff's imputed income, he was entitled to a child support reduction to $150 per week.

During oral argument on the second motion, defendant appeared to acknowledge he had agreed at the mediation of the first motion to plaintiff retiring and moving to another state. His attorney asked the court to consider the parties' course of conduct following mediation, which was consistent with a child support reduction to $900. The attorney added defendant had objected when plaintiff brought up relocation. The attorney explained: "Initially, the

talks about relocation were to Connecticut. In 2016 and 2017, after mediation, suddenly it was Florida. It's a big difference. Big difference to my guy. So he was opposing that."

Defendant denied plaintiff's allegation about his reduction in parenting time. He claimed that as their child became older, plaintiff had scheduled certain activities for her that sometimes if not often conflicted with his PSA parenting time schedule.

Last, concerning mediation, defendant said he was willing to mediate the dispute. He changed his mind when plaintiff insisted on appearing with counsel. Because defendant felt his child support obligations were clear, he did not want to pay an attorney to appear at mediation sessions and he did not want to appear without an attorney if his wife were represented by counsel, particularly since her attorney had written to his and made several unreasonable, overreaching demands. For these reasons, he opposed plaintiff's request for attorney's fees.

The trial court resolved the motion by reducing defendant's child support to $157 per week, denying plaintiff payment by defendant of any child support arrears, requiring defendant to reimburse plaintiff $404 in extraordinary child care expenses, and denying plaintiff counsel fees. In a written decision, the court acknowledged the burden of proving changed circumstances warranting a

8

modification of child support must be borne by the moving party. The court appeared to base his determination that defendant was entitled to a reduction in child support on the PSA paragraph providing for a review of child support upon plaintiff and the parties' daughter leaving the marital home.

The court noted the parties "both consent to child support being re-calculated." Determining plaintiff was willfully underemployed and that it was fair to use her income "when the guidelines were originally calculated," the court imputed to plaintiff her pre-retirement income. The court considered defendant's gross annual income as reported on his case information statement. Concluding from the oral argument that defendant was not exercising the majority of his parenting time, the court credited him with twenty-six "overnights" for purposes of calculating child support. After making a final adjustment for a health insurance cost, the court concluded defendant's child support obligation under the guidelines was $157 per week.

Concerning plaintiff's claimed entitlement to child support arrearages, the court reasoned:

> [Plaintiff] requests the court compel [defendant] to immediately pay his child support arrears. There is a dispute as to whether the parties verbally agreed to decrease [defendant's] child support payments from $1000 per month to $900 per month. It is unclear whether this was an agreement, but [plaintiff] was

accepting this amount for [forty-three] months. She never sought any judicial remedy. In fact, it does not appear that [plaintiff] even sought to resolve this discrepancy with [defendant] for at least [forty-three] months. [Plaintiff] accepted this amount. Therefore, [plaintiff's] request is denied. The arrears will remain due and owing, but will be paid over time.

In its memorializing order, the trial court wrote: "Plaintiff's Request to compel [d]efendant to pay [p]laintiff $4870 representing his child support arrears that have accrued from August 2015 through July 2018 based on his reduced payments is DENIED."

Concerning the parties' child's extracurricular activities, the trial court cited the relevant PSA provision requiring defendant to pay one-half and determined defendant was responsible for $404. The court explained:

[Plaintiff] requests reimbursement for a number of things that are include[ed] under the child support payment such as haircuts, outings with friends, transportation, gifts, and vacations. However, it appears that [the parties' daughter] also participated in ski club, camp and a church outing. In total, these cost $808. [Defendant] is responsible for half of this amount, $404. [He] shall pay [plaintiff] $404 within twenty-one days of this order.

Finally, after reviewing the relevant rules, the court denied plaintiff counsel fees, finding both parties had set forth arguments that appeared to be in good faith.

10

On appeal, the parties make essentially the same arguments they made to the trial court. They add their respective interpretations of the seeming ambiguities in the trial court's decision and order.

We begin by noting the difficulty in discerning from the trial court's opinion and order whether the court found as a fact the parties had modified the PSA's child support provision. The trial court noted plaintiff had accepted $900 per month in child support—$100 per month less than that required by the PSA—for forty-three months. Defendant interprets the court's decision as a finding. Defendant asserts: "The [c]ourt found that the original agreement for $1000 per month was modified pursuant to the terms of the [PSA] after plaintiff and the parties' child moved out of the former marital home." Defendant's interpretation is consistent with the court's denial—in its order—of plaintiff's motion to compel defendant to pay support arrears, yet inconsistent with the statement in its opinion that "[t]he arrears remain due and owing, but will be paid over time," an inconsistency plaintiff emphasizes in her appellate brief.

In addition, this ambiguity raises the issue of how the sale of the marital home could be considered a changed circumstance warranting a further child support reduction if the parties had already reduced child support based on the PSA provision.

11

These ambiguities are further complicated by the trial court's failing to address the parties' averments concerning alleged agreements they had reached following mediation of the first motion. We acknowledge the court had a difficult task, as the parties appear to have been less than complete in their submissions.

For example, it does not appear plaintiff denied that she agreed to accept $900 per month in child support either before or following the mediation of the first motion. Rather, she appears to argue that because the parties did not reduce any agreement to writing following the mediation, the court should enforce the PSA's support provision. Of course, if that is the case, defendant may be entitled to the reduction in support the court ultimately ordered based on the PSA's language concerning revisiting child support following plaintiff's leaving the marital residence. If so, it seems defendant would also be required to reimburse plaintiff for the differential between the PSA child support obligation and the actual child support defendant paid until he filed the cross-motion for reduction. See N.J.S.A. 2A:17-56.23a (prohibiting retroactive modification of orders for child support except for the period of a pending application for modification).

Similarly, plaintiff averred in her certifications on the motion, and defendant did not appear to deny, that defendant agreed to the $100 per month

reduction in child support as part of a larger agreement to permit plaintiff to retire and leave the state with their child. In fact, during oral argument, defendant's attorney implied plaintiff's change in mind about which state she intended to move to—not her retirement and move—is what prompted defendant's objection. Of course, if all this is so, one might question how defendant can agree to a child support reduction and plaintiff retiring on one hand, then on the other argue that plaintiff's pre-retirement income should be imputed to her as a factor in further reducing child support.

Indisputably, the trial court's factual findings relating to child support are discretionary and receive deference if supported by substantial credible evidence in the record. Gonzalez-Posse v. Ricciardulli, 410 N.J. Super. 340, 349 (App. Div. 2009); accord Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Invrs. Ins. Co., 65 N.J. 474, 484 (1974)). That standard of review assumes the trial court has made factual findings. If "faced with evidence of disputed material facts, a judge must permit a plenary hearing in order to reach a resolution." Milne v. Goldenberg, 428 N.J. Super. 184, 201 (App. Div. 2012) (citing Tretola v. Tretola, 389 N.J. Super. 15, 20 (App. Div. 2006)); see also Fusco v. Fusco, 186 N.J. Super. 321, 329 (App. Div. 1982).

13

Here, the point of departure is indeed the PSA. The trial court acknowledged the parties' dispute about whether they verbally modified the PSA's child support provision, but never resolved the conflicting factual underpinnings of the dispute. According to defendant's certification, the parties resolved the PSA provision concerning revisiting child support by agreeing to the $100 per month reduction, a resolution that avoided the expenditure of considerable legal fees and motion practice. According to plaintiff, defendant agreed she could retire and move out of state with their daughter. The trial court must resolve these disputes.

If the court finds there was such an agreement, then it must consider whether either party has demonstrated a change of circumstances from the revised agreement to warrant a modification of child support. If the court determines there was no enforceable oral agreement, either because neither party has carried the burden of proving such an agreement, or because the PSA prohibited oral modifications, or for any other reason, then it should articulate such factual findings. If the court determines there was no enforceable modification of the PSA, then it must also determine whether defendant must pay arrearages in child support and if not, why N.J.S.A. 2A:17-56.23a does not prohibit the enforcement of such retroactive relief. The court must also

determine after considering all relevant circumstances, including whether defendant agreed to plaintiff's retirement, whether an upward or downward adjustment of defendant's child support obligation is warranted.

In view of the need to remand this matter to the trial court, we need not address plaintiff's remaining arguments. We add only our agreement with the trial court's astute observation that the PSA provision concerning the parties' daughter's extracurricular activities, without any attempt to define such activities, was an invitation to precisely the type of motion practice that occurred. Nevertheless, the trial court must determine whether the parties' intent concerning what activities qualified as extracurricular was to exclude activities usually subsumed in child support or was otherwise established through their course of dealing. Concerning counsel fees, we find no abuse of discretion by the trial court in reaching its decision, but on remand we do not preclude reconsideration of counsel fees, particularly if the parties are not forthcoming about their verbal agreements.

Last, we emphasize this opinion should not be construed as indicating in any way the outcome of the remand proceedings or whether it should be the same as, or different from, that set forth in the order we now vacate. Nor do we preclude the trial court from permitting additional submissions. We are

15

confident the trial court will resolve the conflicting material facts in an expeditious manner and require a hearing only if necessary.

The trial court's November 7, 2018 order is vacated and we remand this matter for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1701-18T3