# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2278-23

SARA HUTT,

    Plaintiff-Appellant,

v.

DAVID M. HUTT,

    Defendant-Respondent.

_____

       Submitted October 22, 2024 – Decided February 20, 2025

       Before Judges Gilson, Bishop-Thompson, and Augostini.

       On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FM-20-0549-16.

       Lum, Drasco & Positan LLC, attorneys for appellant (Gina M. Sorge, of counsel and on the briefs; Christa J. Tomasulo, on the briefs).

       Wilentz Goldman & Spitzer, PA, attorneys for respondent (Edward T. Kole, on the brief).

PER CURIAM

In this post-judgment matrimonial matter, plaintiff Sara Hutt appeals from a February 16, 2024 Family Part order vacating a January 2, 2024 order that held defendant David M. Hutt in violation of litigant's rights and awarded plaintiff $10,575.50 in attorney's fees and costs. She contends the Family Part judge: abused his discretion in vacating three provisions of the January 2, 2024 order on reconsideration; vacated the order and made factual findings that were not based on adequate evidence in the record; and the second judge applied the incorrect standard of review. We affirm the Family Part order, finding no reversible abuse of discretion.

I.

The parties are fully familiar with the facts, so we recite only those facts from the motion record that are relevant to this appeal. The parties were married in 1997.

During their marriage, the parties acquired assets, including interests in seven real estate entities and businesses. Defendant acquired a 16.66% minority interest in Daufuskie Island Water and Sewer Utility Company (DIUC), along with 66.66% majority member Terry R. Lee and 16.66% minority member Ronald Shimanowitz. In May 2013, Daufuskie Island Holding Company (DIHC) was organized as the sole shareholder of DIUC with the same

A-2278-23

membership structure. Shortly thereafter, 100% of DIUC stock was acquired by JJK Utilities Holdings, LLC (JJK) pursuant to a Membership Resolution Agreement between CK Materials, LLC and JJK. JJK then transferred the DIUC shares to DIHC.

Divorce proceedings initiated in 2016. In a May 2017 response to plaintiff's expert's document demand, defendant produced the July 9, 2008 Operating Agreement for JJK, the March 14, 2013 Operating Agreement for DIHC, the DIUC stock certificate, and copies of two checks that reflected capital calls relative to the investment. In August 2017, defendant also produced the 2016 federal tax return for DIUC to plaintiff's counsel and her expert.

Over a year later, in August 2018, the parties executed an operating agreement for Hutt Holdings, LLC (HHL). The agreement appointed defendant as the managing member and gave the parties equal ownership in the holding company. The agreement also identified the seven real estate entities, including defendant's twenty percent interest in Greenwood Plaza, Inc. (Greenwood) and his 16.66% interest in DIUC.

A Partial Final Judgment (PFJ) was entered on September 7, 2018, which memorialized defendant as the minority owner in the seven real estate entities before their divorce was finalized. The PFJ also memorialized the parties' equal

3

interest, equal entitlement, and equal responsibilities in those real estate entities. In furtherance of those equal rights, the parties agreed to establish HHL.

Five days later, on September 12, 2018, the parties signed a Marital Settlement Agreement (MSA), which reflected the parties' resolution of all issues and claims concerning the dissolution of their marriage. Paragraph 4.8 of the MSA confirmed the execution of the HHL Operating Agreement. Under that paragraph, defendant was obligated to provide "a copy of each document confirming the transfer of [defendant's] interest [into the HHL] to [plaintiff]." Defendant also agreed to "make diligent effort to obtain" and provide plaintiff with the following:

- The operating agreement(s) for each underlying entity;

- Any and all notices, letters, e[]mails, accountings or other documents received by [defendant] in 2017 and 2018 year to date related to each entity; and

- A schedule of all distributions to [defendant] and contributions/capital calls made by [defendant] for 2017 and 2017 year to date related to each entity.

The MSA was incorporated in the Dual Judgement of Divorce (DJOD), which was entered on September 25, 2018.

Sometime in 2018, tenant Aucliar Corporation initiated litigation against its landlord Greenwood, Auclair Corp. v. Greenwood Plaza, Inc., docket number

4

MID-L-2436-18. The parties resolved the litigation in September 2019. Throughout the litigation, Greenwood was represented by defendant's firm.[1]

In October in 2019, defendant became aware that JJK shareholder, Jadwiga Karabinchak, retained counsel to inquire about the status of the family's interest in DIUC from a letter from Karabinchak's counsel to Lee. In essence, Karabinchak asserted that in an October 29, 2013 email, Lee "promised" to establish a trust for the Karabinchak children and place "one-third of the net proceeds from either profits or net proceeds from the sale of [DIUC]" to "convince" Karabinchak to execute the Membership Redemption Agreement and related documents. Prior to 2019, neither defendant, Shimanowitz, nor DIUC Manager John Guastella were aware of any agreement between Lee and Karabinchak and had not been provided with any communication that obligated DIUC or DIHC to make payments to a trust fund for the benefit of Karabinchak's children.

On March 22, 2023, defendant forwarded plaintiff an email, as the "first of several emails about a proposed refinance of DIUC" to pay off the then-existing loan, real estate taxes, and make improvement to the systems.

---

[1] Defendant and Shimanowitz are partners in a New Jersey law firm.

A-2278-23

Defendant told plaintiff that he had "no advance notice." Several unsigned documents were attached to the email: the loan closing statement, the loan agreement, the promissory note, the security agreement, the addendum to the promissory note, and the draft authorization for loan closing fees and loan payment and fees.

After receiving notice, DIUC counsel provided plaintiff's counsel with DIHC's filings with the South Carolina Public Service Commission (SCPSC) and a copy of the SCPSC's order approving the refinancing. Plaintiff's counsel was told the funds were needed to "keep functioning and providing service to its customers," "address accounts payable," and "to fund necessary capital improvements to the system." Plaintiff was also told that "no other distributions [would] be made."

Plaintiff filed a motion in aid of litigant's rights, asserting defendant failed to comply with his disclosure obligation under Paragraph 4.8 of the MSA, the HHL Operating Agreement, and the PFJ. Plaintiff specifically asserted that: (1) she "discovered" on November 1, 2022, that DIUHC was formed and acquired DIUC prior to signing the MSA in August 2018; (2) she learned in a March 24, 2023 email from defendant that DIUC's existing loan was being refinanced, and further stated they had not received any distribution, dividend, or other financial

6

benefits from DIUC since HHL was established in 2018; (3) in 2013 DIUC made agreements with the Karabinchak's to establish and fund a trust for the benefit of their children; (4) defendant held an interest in 7 Broadway; (5) defendant had ownership of 114 Longfield Court in East Brunswick; (6) defendant had a beneficiary interest in the Weingarten Trust; (7) defendant held shares of Columbia stock; and (8) she was unaware a tenant had sued Greenwood prior to the entry of the MSA nor did defendant disclose that he represented Greenwood. Accordingly, plaintiff requested that defendant produce documents concerning each allegation, and an award of attorney's fees and costs.

Defendant cross-moved for attorney's fees, asserting that he produced documents to plaintiff five years ago during the divorce litigation. In his supporting certification, defendant argued: (1) all documents plaintiff requested prior to the entry of the MSA were made available for inspection by plaintiff and her expert during litigation; (2) he was no longer in possession of any documents held prior to the MSA; and (3) DIUC documents were readily accessible to plaintiff. Defendant also points to an October 26, 2021 email from Guastella to plaintiff that "[t]here [had] never been dividends or other payments to [defendant], [HHL], or other owners. . . ."

Defendant's assertion that he was "unaware" of whether a trust was set up for or by another member of the DIUC was supported by emails. He explained that he had no documents related to CK Materials, JJK, the Karabinchak's membership in DIUC or DIUHC, the establishment of a trust, and DIUC or DIUHC's annual net profits other than what had already been provided to plaintiff.

Regarding DIUC's refinancing, defendant relied on his March 2023 email to plaintiff about the proposed refinancing of the existing bank loan. On at least three occasions, defendant sent emails with the Unanimous Consent Form for plaintiff's signature, which was required to close on the loan and sale of DIUC. Plaintiff "refused" to sign the form.

As to Greenwood, defendant asserted HHL holds a "minority interest" as a "passive investor" and has "no control" over the operations of the entity. He restated that he provided all documents regarding Greenwood during the ligation, except for documents deemed privileged. He also argued plaintiff had subpoenaed Auclair's President Ralph Mocci to produce documents and "presumably obtained or could have obtained all the information from him." A settlement agreement was entered in September 2018, and defendant provided a

copy of that agreement to plaintiff and a letter to Mocci regarding an allegation of a breach of the settlement agreement.

As to plaintiff's remaining document requests, defendant certified that plaintiff was provided with K1s for the HHL entities each year. He explained that: he was a trustee of certain trusts held by the Weingarten Family and not a beneficiary, he was the registered agent for 7 Broadway and had no interest in the property, and "many years ago" he quitclaimed his interest in 114 Longfield Court, which was purchased prior to the parties' marriage. Lastly, defendant's ownership of the Columbia stock was listed on his case information statement and documents were provided to plaintiff and her expert during the litigation. He no longer has that information nor owns the stock.

While the motions were pending, in a May 24, 2023 letter to DIHC's counsel, plaintiff's counsel confirmed her "understanding" that "the funds to be disbursed to DIUC [were] to be used to pay outstanding property taxes and for construction and other capital improvements."

Following oral argument, in a January 2, 2024 order (January 2024 order), the judge found defendant in violation of plaintiff's rights. Defendant was directed to produce documents regarding the "initial formation, amendments, identification of all members and their respective percentages from the date of

formation to date for DIUC/DIHC, HHL entities, loan/refinancing transaction related to DIUC/DIHC, the Weingarten Trust, and Greenwood Plaza recorded liens within thirty days." The judge also awarded plaintiff $10,575.50 in attorney's fees and costs, as well as a potential $400 per day sanction in the event defendant failed to produce the documents.

Thereafter, defendant moved for reconsideration of that order, asserting that he had complied with his discovery obligations during the divorce litigation. Plaintiff cross-moved to enforce the January 2024 order and sought attorney's fees and costs.

Oral argument was conducted before a different judge than the judge who entered the January 2024 order. The second judge was the Family Part judge who had previously presided over the parties' pre-judgment motions. On February 16, 2024 (February 2024 order), the second judge vacated the provisions of the January 2024 order, finding defendant was in violation of litigant's right, awarding plaintiff's attorney's fees, and imposing potential sanctions of $400 per day. A memorializing order was entered that same day.

At the outset of hearing, on the record the judge noted the January 2024 order was an interlocutory order; and therefore, he considered the motions under Rule 4:42-2 because a final order had not been entered. In the statement of

reasons, the judge determined that "[t]o the extent [p]laintiff was seeking documents in accordance with the parties [MSA], Paragraph 4.8, those documents have been provided." The judge further reasoned that, "[w]ith regards to [some] documents, such as [those concerning DIUC/DIHC], correspondence from prior to the settlement between [the] parties indicates clearly that the documents were provided at that time[] [and] [o]ther documents either did not exist or were beyond the control [of] [d]efendant." Lastly, the judge "[was] not satisfied that [p]laintiff was entitled to the discovery she sought, especially regarding assets not subject to Paragraph 4.8."

Regarding attorney's fees, the second judge reasoned defendant should not be liable for plaintiff's attorney's fees because of the "paucity of information"— no updated Case Information Statement from the parties, defendant's income was "misstated" by the first judge, there was no income information for plaintiff, and plaintiff resided in Florida. This appeal follows.

II.

On appeal, plaintiff presents three arguments for our consideration. Plaintiff argues, for the first time on appeal, the second judge abused his discretion in vacating the January 2024 order. Second, the judge abused his discretion by applying the wrong standard of review. Lastly, plaintiff argues the

11

judge's vacation of the order was not based on adequate evidence in the record and the wrong standard of review was applied to the factual findings.

Our review of a Family Part order is limited. See Cesare v. Cesare, 154 N.J. 394, 411 (1998). Trial court rulings are "binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-12 (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). "Because of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Id. at 413.

We review a Family Part's factual findings under an abuse of discretion standard. See Gonzalez-Posse v. Ricciardulli, 410 N.J. Super. 340, 354 (App. Div. 2009). A court abuses its discretion "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)) (internal quotation marks omitted). We, however, review all legal conclusions de novo. Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017).

An order to enforce litigant's rights under Rule 1:10-3 is reviewed for abuse of discretion. Wear v. Selective Ins. Co., 455 N.J. Super. 440, 458-59

12

(App. Div. 2018) (citing <u>Barr v. Barr</u>, 418 N.J. Super. 18, 46 (App. Div. 2011)). We also review a trial judge's decision on whether to grant or deny a motion for reconsideration for an abuse of discretion. <u>JPC Merger Sub LLC v. Tricon Enters., Inc.</u>, 474 N.J. Super. 145, 160 (App. Div. 2022).

We first address plaintiff's argument that the Family Part judge abused his discretion in vacating the January 2024 order. We discern no reversible error because there is no evidence in the record supporting plaintiff's contention that defendant was obligated post-judgment to provide information outside of the scope of the MSA. Here, the second judge reviewed the parties' submissions, heard arguments, and based on his "intimate familiarity" with the matter pre-judgment, determined that defendant had complied with Paragraph 4.8 of the MSA. The record shows defendant had produced documents related to JJK, DIUC, DIHC, the Weingarten trust, and 114 Longfield Court prior to the execution of the MSA. There was also no proof that defendant was in possession of documents related to any trust or to 7 Broadway. Lastly, defendant nevertheless provided plaintiff with documents concerning Greenwood that were not privileged.

The record does not support plaintiff's argument that defendant failed to fully disclose information regarding the DIHC financing in March 2023.

13

Defendant told plaintiff he had no "advance notice" of the refinancing and immediately forwarded the email with attachments. As an equal member of HHL, plaintiff had access to DIHC's business operations and was free to seek additional information directly from DIHC. After plaintiff's counsel sought clarification for the loan's purpose, plaintiff understood how the funds would be disbursed.

The record also supports the second judge's determination even if there was a good faith dispute concerning the requirements for the disclosure of the documents pursuant to a fiduciary duty, there was no showing that defendant violated Paragraph 4.8 of the MSA. We discern no abuse of discretion in the vacation of the January 2024 order because the judge's factual findings were supported by adequate, substantial and credible evidence, and therefore are binding on appeal. Rova Farms Resort, 65 N.J. at 484.

We next address plaintiff's argument that the Family Part judge analyzed the motion for reconsideration using the incorrect standard of review. Plaintiff further argues the judge erred in considering the motions under Rule 4:42-2 because she sought enforcement of a final order—the DJOD and the incorporated MSA.

A-2278-23

Defendant moved for reconsideration of the January 2024 order. At the time the second judge considered that motion, the January 2024 order was not final because it provided for sanctions should defendant fail to produce the documents. Moreover, given the second judge's knowledge of the case, the judge had the discretion to review the January 2024 order. In short, we discern no reversable error and see no grounds for reversal and remand.

Considering this ruling, we need not address plaintiff's argument that the second judge abused his discretion in vacating the award of attorney's fees. To the extent we have not addressed any arguments raised by plaintiff, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2278-23